Filed 3/15/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRINIDAD RAMIREZ et al., | F071223, F071324, F071872 |
| Plaintiffs and Appellants, | (Super. Ct. No. VCU256099) |
| v. | |
| TULARE COUNTY DISTRICT ATTORNEY'S OFFICE et al., | |
| Defendants and Respondents. | |
| KHAMFONG CHAMPAHEUANG et al., | |
| Plaintiffs and Appellants, | (Super. Ct. No. VCU255956) |
| v. | |
| TULARE COUNTY DISTRICT ATTORNEY'S OFFICE et al., | |
| Defendants and Respondents. | |
| RICHARD SANCHEZ et al., | |
| Plaintiffs and Appellants, | (Super. Ct. No. VCU255959) |
| v. | |
| TULARE COUNTY DISTRICT ATTORNEY'S OFFICE et al., | **OPINION** |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Tulare County.  Melinda M. Reed, Judge.

Mark T. Clausen for Plaintiffs and Appellants.

Kathleen Bales Lange, County Counsel, and Kevin A. Stimmel, Deputy County Counsel for Defendants and Respondents County of Tulare et al.

McCormick, Kabot, Jenner & Lew and Nancy A. Jenner for Defendants and Respondents City of Porterville and Porterville Police Department.

Tuttle & McCloskey, Daniel T. McCloskey and James F. McBrearty for Defendants and Respondents City of Dinuba and Dinuba Police Department.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Marc A. LeForestier and John W. Killeen, Deputy Attorneys General, for Defendant and Respondent State of California.


Under California law, property connected with certain unlawful drug activity may be subject to forfeiture to the state or local government (Health & Saf. Code, §§ 11469–11495, the forfeiture statutes).[1]  The law is intended to be "remedial by removing the tools and profits from those engaged in the illicit drug trade."  (§ 11469, subd. (j).)  Nonetheless, because forfeiture is disfavored, the forfeiture statutes are strictly construed in favor of the person against whom forfeiture is sought, and procedural requirements set forth in the forfeiture statutes must be fully satisfied by the agency pursuing that remedy.  (See *Cuevas v. Superior Court* (2013) 221 Cal.App.4th 1312, 1322–1331 (*Cuevas*).

Here, in three related actions[2] filed in the trial court, separate plaintiffs sought the return of their seized property (collectively plaintiffs)[3] on the ground that government

---

[1]    Unless otherwise indicated, further statutory references are to the Health and Safety Code.

[2]    We use the term "action" broadly to include special proceedings of a civil nature.  (See Code Civ. Proc., § 363; see also Code Civ. Proc., § 1109.)

[3]    The three actions have been consolidated for purposes of this appeal, and consist of *Ramirez et al. v. Tulare County District Attorney's Office et al.*, case No. F071223 (the lead case), *Champaheuang et al. v. Porterville Police Department et al.*, case No. F071324, and *Sanchez et al. v. Dinuba Police Department et al.*, case No. F071872.  Plaintiffs and appellants are Trinidad Ramirez and Elgio Perez (in case No. F071223); Khamfong Champaheuang,

2.

agencies purportedly conducting forfeiture proceedings (collectively defendants)[4] failed to comply with the statutory requirements for nonjudicial forfeiture. In each action, the respective plaintiffs filed a petition for writ of mandate in the trial court alleging that the property seized by law enforcement officers must be returned to said plaintiffs because, among other things, no forfeiture proceedings were ever initiated *by prosecutors*, as specifically required by the forfeiture statutes. (See § 11488.4, subd. (j).) Instead, according to the petitions, local police officers attempted to initiate the nonjudicial forfeiture proceedings *on their own*, a practice that we recently held would render the forfeiture proceedings "invalid in the first instance." (*Cuevas*, *supra*, 221 Cal.App.4th at pp. 1327, 1331.) In short, plaintiffs alleged that because no valid forfeiture proceedings were ever initiated, and the time for doing so had expired, plaintiffs' personal property must be returned.

In response to the petitions for writ of mandate, defendants in each case filed general demurrers challenging the sufficiency of the pleadings on three fundamental grounds: (i) failure to exhaust administrative remedies; (ii) failure to comply with the Government Claims Act (Gov. Code, § 810 et seq.); and (iii) expiration of the statute of limitations. The trial court agreed with the statute of limitations argument, concluding that a one-year statute of limitations was applicable. The demurrers were sustained on that ground, without leave to amend, and judgments of dismissal were entered in each case. In this consolidated appeal, plaintiffs contend that the trial court should have overruled the demurrers in their entirety. As more fully explained in the discussion

---

Phoxay Champaheuang and Phaxay Champaheuang (in case No. F071324); and Richard Sanchez, Frank Carlos and Jose Olivares (in case No. F071872).

**4**     Defendants are Tulare County District Attorney's Office, Tulare County Sheriff's Office, County of Tulare and State of California (in case No. F071223); Porterville Police Department, City of Porterville, Tulare County District Attorney's Office, County of Tulare and State of California (in case No. F071324); and Dinuba Police Department, City of Dinuba, Tulare County District Attorney's Office, County of Tulare, and State of California (in case No. F071872).

portion of this opinion, we believe plaintiffs are correct. Accordingly, we reverse the judgments below, with instructions that the trial court enter new orders overruling defendants' demurrers in each of the consolidated actions.

## FACTS AND PROCEDURAL HISTORY

*The Pleadings in the Trial Court*

We begin by summarizing the relevant pleadings[5] filed in the trial court in the three separate cases from which appeals have been taken (i.e., cases Nos. F071223 [lead case], F071324, and F071872), and which have been consolidated for purposes of this opinion.

The Ramirez case (case No. F071223)

*Ramirez et al. v. Tulare County District Attorney's Office et al.* was originally filed in Tulare County Superior Court on April 28, 2014 (Super. Ct. Tulare County, 2014, No. 256099), by plaintiffs Trinidad Ramirez and Elgio Perez. A first amended complaint/petition for writ of mandate (petition) was filed by said plaintiffs on July 23, 2014, which was the operative pleading at the time of the demurrer. Defendants named therein included Tulare County District Attorney's Office, Tulare County Sheriff's Office, County of Tulare and State of California.

According to the petition, in January 2011, Tulare County Sheriff's deputies lawfully seized $1,420 in cash from plaintiff Ramirez based on an alleged violation of section 11378 (possession of controlled substance for purpose of sale). Immediately following the seizure, Tulare County Sheriff's Deputy G. Bonilla issued Ramirez a receipt[6] for the seized property and "contemporaneously issued 'Notice of Nonjudicial

---

**5**     Although the pleadings in each case contained causes of action other than writ of mandate, such other causes of action were not raised at the time of the demurrer hearings, nor are they mentioned on appeal. For these reasons, it appears that these other causes of action have been abandoned by plaintiffs.

**6**     Pursuant to section 11488, subdivision (c), there is "a presumption … that the person to whom a receipt for property was issued is the owner thereof." The presumption "may … be

4.

Forfeiture Proceedings' (Notice) under the ostensible authority of section 11488.4, subdivision (j)." Bonilla signed the receipt and notice, copies of which were attached to the petition. Allegedly, "No one employed by the [Tulare County District Attorney's Office] signed the notice or reviewed the facts and evidence related to the seizure of the property *prior to* Officer Bonilla's execution of the Notice, as required by section 11488.4." It was conceded in the petition that Ramirez did not file a claim opposing forfeiture within 30 days of service of the notice. Months later, on July 26, 2011, the Tulare County District Attorney issued a final declaration of "administrative" (or nonjudicial)[7] forfeiture of the subject property, declaring that the $1,420 in cash was forfeited to the state for distribution in accordance with section 11489.[8]

Similarly, on November 1, 2012, Tulare County Sheriff's deputies allegedly lawfully seized $1,698 in cash from plaintiff Perez based on an alleged violation of section 11359 (possession of marijuana for purpose of sale). Immediately following the seizure, Tulare County Sheriff's Deputy Van Curen issued Perez a receipt for the property "and contemporaneously issued Notice of non-judicial forfeiture proceedings under the ostensible authority of subdivision (j) of section 11488.4." Van Curen signed the receipt and notice, copies of which were attached to the petition. As with Ramirez, in Perez's case "[n]o one employed by the [Tulare County District Attorney's Office] signed the Notice or reviewed the facts and evidence *prior to* Van Curen's execution of

rebutted at the forfeiture hearing specified in Section 11488.5." (*Ibid.*) As plaintiffs alleged in this and the other petitions, no such hearing will be available to potentially overcome the presumption because the property was seized more than one year prior and, therefore, the one-year statute of limitations for filing a judicial forfeiture petition had lapsed in each of the underlying cases. (See § 11488.4, subd. (a).) Thus, plaintiffs assert that they are conclusively presumed to be the owners of the seized property.

[7] The terms administrative forfeiture and nonjudicial forfeiture are synonymous and are used interchangeably herein.

[8] Section 11489 contains a formula for distribution of forfeiture proceeds after certain expenses are deducted, with the greatest share of forfeiture proceeds going to the law enforcement entities that participated in the seizure of the assets.

the Notice" of nonjudicial forfeiture proceedings. (Italics added.) The petition admitted that Perez did not file a claim opposing forfeiture within 30 days after service of the notice. Several months later, on May 1, 2013, the Tulare County District Attorney issued a declaration of administrative (i.e., nonjudicial) forfeiture of the subject property, formally declaring that the $1,698 in cash was forfeited to the state for distribution in accordance with section 11489.

According to the petition, the administrative forfeiture proceedings were allegedly invalid from their inception, based on our decision in *Cuevas*, *supra*, 221 Cal.App.4th 1312, since the forfeiture proceedings were initiated by police officers or sheriff's deputies, rather than by the district attorney or Attorney General, as the forfeiture statutes plainly require.[9] As a result, a duty allegedly existed to return the property to plaintiffs. Among other things, the prayer for relief requested that the trial court issue a "writ of mandate … which declares invalid and void the notices and declarations of administrative forfeiture issued by [defendants] for the property of [plaintiffs] … and which … [¶] [c]ompels [defendants] to return the property, or, if [defendants] are not able to do so, to pay equitable compensation of equal value in accordance with *Minsky* [*v. City of Los Angeles* (1974) 11 Cal.3d 113 (*Minsky*)] …."

The Champaheuang case (case No. F071324)

*Champaheuang v. Porterville Police Department, et al*. was originally filed in the trial court on April 15, 2014 (Super. Ct. Tulare County, 2014, No. 255956), entitled "Petition for Writ of Mandate to Compel Return of Seized Property." It set forth the claims of plaintiffs Khamfong Champeheuang, Phoxay Champaheuang and Phaxay Champaheuang. At the time of the dispositive demurrers, the operative pleading was the

---

[9] The section relating to nonjudicial forfeiture refers to "[t]he Attorney General or the district attorney" as those who initiate such proceedings. (See § 11488.4, subd. (j).) For convenience, we sometimes refer to these as prosecutors or prosecuting agencies. (See *Cuevas*, *supra*, 221 Cal.App.4th at p. 1325 [noting the forfeiture statutes' differentiation between law enforcement agencies and prosecuting agencies].)

6.

second amended petition for writ of mandate (petition), filed on November 7, 2014. Named as defendants were Porterville Police Department, City of Porterville, Tulare County District Attorney's Office, County of Tulare, and State of California.

According to the petition, on October 26, 2011, Porterville Police officers lawfully seized from the Champaheuangs a total of $16,000 in cash, a 2004 Toyota pickup truck, and a 2005 Lexus 4-door vehicle. Immediately following the seizure, Officer R. Meier, a police officer with the Porterville Police Department, issued to each of the Champaheuangs a separate receipt for the seizure of property subject to forfeiture (Receipt). At the same time, Meier allegedly also issued a "Notice of Intended Forfeiture Pursuant to … Section 11488.4 (Notice) to each of the CHAMPAHEUANGS under the ostensible authority of subdivision (j) of section 11488.4." As alleged in the petition, "[t]he Notice was not initiated by the district attorney or Attorney General as required by section 11488.4." Among other things, the notice advised the Champaheuangs that if they desired to contest the forfeiture of the property, a claim would have to be filed within 30 days after receipt of the notice. It was conceded in the petition that no claim opposing forfeiture was filed. Subsequently, on May 10, 2012, the district attorney allegedly executed a declaration of administrative forfeiture pursuant to subdivision (j) of section 11488.4, declaring that the $16,000 in cash, the Toyota pickup and the Lexus 4-door vehicle were forfeited to the state for distribution in accordance with section 11489.

The petition by the Champaheuangs sought a writ of mandate compelling the return of their property on the ground that the forfeiture proceedings were invalid from the outset pursuant to our decision in *Cuevas*, *supra*, 221 Cal.App.4th 1312, because police officers had initiated the nonjudicial forefeiture proceedings, rather than prosecutors, as required by the forfeiture statutes. In the event that the property cannot be returned by defendants, the petition requested alternatively that plaintiffs be compensated in equity for the value of the property, "in accordance with *Minsky*, *supra*, 11 Cal.3d 113 .…" (Fn. omitted.)

The Sanchez case (case No. F071872)

*Sanchez et al. v. Dinuba Police Department et al.* was originally filed in the trial court on April 15, 2014 (Super. Ct. Tulare County, 2014, No. 255959). A first amended complaint/petition for writ of mandate (petition) was filed on July 24, 2014, and was the operative pleading at the time of the demurrers. Plaintiffs were Richard Sanchez, Frank Carlos, Jose Olivares and David Yama.[10] Defendants were Dinuba Police Department, City of Dinuba, Tulare County District Attorney's Office, County of Tulare and State of California.

According to the petition, on November 9, 2010, Officer Lopez of the Dinuba Police Department lawfully seized $7,040 in cash and a 2006 Chevrolet pickup truck from plaintiffs Sanchez and Carlos based on their alleged involvement in narcotics activity. Lopez executed and served separate receipts to Sanchez and Carlos, along with "Notices" purporting to initiate nonjudicial forfeiture proceedings. As with the other incidents, allegedly "[n]o one from the District Attorney or Attorney General's Office signed the Notices," and "Lopez did not contact the District Attorney or Attorney General before initiating administrative forfeiture proceedings and issuing and executing the Notices." Subsequently, on April 26, 2011, the district attorney executed a declaration of administrative forfeiture pursuant to subdivision (j) of section 11488.4, formally declaring the $7,040 in cash and the Chevrolet pickup truck to be forfeited to the state for distribution in accordance with section 11489.

On March 30, 2011, Officer J. Ayala with the Dinuba Police Department allegedly lawfully seized $2,099 in cash from plaintiff Olivares based on alleged involvement in narcotics activity. As in the other cases herein, a receipt was issued by Ayala to plaintiff Olivares along with a notice purporting to initiate nonjudicial forfeiture proceedings. No

---

**10** Plaintiff Yama is not a party to the present appeal; therefore, we have omitted the background facts relevant to him.

8.

claim was filed by Olivares within 30 days after service of the notice. On October 5, 2011, the district attorney executed a declaration of administrative forfeiture pursuant to subdivision (j) of section 11488.4, declaring that the $2,099 in cash was forfeited to the state for distribution per section 11489.

The petition by plaintiffs Sanchez, Carlos, and Olivares sought the issuance of a writ of mandate by the trial court compelling the return of the seized property, based on plaintiffs' contention that the forfeiture proceedings were invalid at their inception pursuant to our decision in *Cuevas*, *supra*, 221 Cal.App.4th 1312, because police officers had initiated the nonjudicial forefeiture proceedings, rather than prosecutors. In the event defendants were unable to return the property, the petition requested in the alternative that plaintiffs be compensated in equity for the value of the property, "in accordance with *Minsky* …."

*The Demurrer Rulings*

In the *Ramirez* case, demurrers were filed by defendants (including County of Tulare, Tulare County District Attorney's Office, Tulare County Sheriff's Office, and State of California) to the petition filed therein. Defendants' demurrers challenged the sufficiency of the petition to state a cause of action for writ of mandate on several distinct grounds, including that (i) plaintiffs failed to exhaust their administrative remedies by their failure to file claims opposing forfeiture under sections 11488.4 and 11488.5; (ii) plaintiffs failed to file a government claim for damages under the Government Claims Act; and (iii) plaintiffs' actions were untimely because a one-year statute of limitations was applicable under Code of Civil Procedure section 340. Following oral argument on the demurrers on December 15, 2014, the trial court issued an order sustaining the demurrer in part and overruling it in part.

In its ruling on the demurrer in *Ramirez,* the trial court rejected defendants' contention that the failure by plaintiffs Ramirez and Perez to submit claims opposing forfeiture (under §§ 11488.4 & 11488.5) constituted failure to exhaust administrative

remedies.  In so holding, the trial court expressly relied on our decision in *Cuevas* that a nonjudicial forfeiture proceeding initiated by police officers was "invalid in the first instance" and, consequently, "there was no proper or valid forfeiture proceeding to which [the plaintiff] could make a claim." (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1327.)  Thus, the trial court concluded plaintiffs were not barred on the ground that they failed to file timely claims under sections 11488.4 and 11488.5.

Next, the trial court's ruling rejected defendants' argument that plaintiffs' petition was barred due to their failure to file a claim for damages under the Government Claims Act.  The trial court explained that plaintiffs were not making a claim for money or damages under Government Code section 905, but were "seeking return of their property."  As such, plaintiffs were not required to submit a government claim to defendants.  The trial court further observed that the case of *Minsky*, *supra*, 11 Cal.3d at page 124 was controlling on this issue, since *Minsky* held "'that (a) complaint, seeking the recovery of property seized and wrongfully withheld by (the governmental) defendants does not involve a claim for "money or damages" within the meaning of [Government Code] section 905.'"

Lastly, the trial court addressed the statute of limitations arguments.  The main question to be decided by the trial court was whether the applicable statute of limitations for plaintiffs' claims was Code of Civil Procedure section 338, subdivision (c), which provides a three-year statute of limitations period with respect to actions for "the specific recovery of personal property," or Code of Civil Procedure section 340, subdivisions (a) and (b), which provides a one-year statute of limitations period for "[a]n action upon a statute for a penalty or forfeiture."  A secondary issue was whether the statutory period would run from the date of seizure of the property, as argued by defendants, or from the date of the declaration of forfeiture of the property, as argued by plaintiffs.  In its demurrer ruling, the trial court concluded that the one-year statute of limitations (i.e., Code Civ. Proc., § 340) was applicable, and it further held that the limitations period

would run from the date of seizure of the property. Based on these conclusions, the trial court found that plaintiffs' claims were time-barred. The demurrers to the petition were sustained without leave to amend and judgment of dismissal was entered.

On January 5, 2015, the trial court issued an identical ruling on the demurrers in the *Sanchez* case. Defendants in *Sanchez*, including City of Dinuba, Dinuba Police Department, County of Tulare, Tulare County District Attorney's Office and State of California, had raised the same issues on demurrer as were presented by defendants in the *Ramirez* case. The trial court held in the *Sanchez* case that (i) plaintiffs were excused from exhausting the claim requirement in the forfeiture statutes based on our holding in *Cuevas*, *supra*, 221 Cal.App.4th 1312; (ii) the Government Claims Act did not apply since plaintiffs were seeking the return of specific property, not damages; but (iii) plaintiffs' claims were barred by the one-year statute of limitations under Code of Civil Procedure section 340. Therefore, the demurrers by defendants in the *Sanchez* case were sustained based on the statute of limitations without leave to amend and a dismissal judgment was entered by the trial court.

On January 13, 2015, all parties in the *Champaheuang* case submitted a stipulation and proposed order for the trial court to sustain the demurrers therein on the same grounds as in the *Ramirez* and *Sanchez* cases, after which a dismissal judgment would be entered. Demurrers had been filed by defendants City of Porterville, Porterville Police Department, County of Tulare, Tulare County District Attorney's Office, and State of California. The trial court approved the stipulation, and entered an identical ruling on demurrer as in the prior cases. The trial court proceeded to dismiss the petition filed in *Champaheuang* without leave to amend on the ground of statute of limitations. A judgment was entered thereafter.

Plaintiffs timely filed notices of appeal from the judgments in each of the three separate actions. Because they involved identical legal issues, we ordered the appeals consolidated.

11.

## DISCUSSION

### I.       Standard of Review

On appeal from a judgment dismissing an action after sustaining a demurrer, we review de novo whether the complaint states facts sufficient to constitute a cause of action under any legal theory.  (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law."  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  We also consider matters which may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "'We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.  [Citations.]  We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.  [Citation.]'"  (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)  Further, we are not bound by the trial court's analysis of questions of law, and we independently review the interpretation of statutory provisions.  (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10.)

### II.      Legal Background to the Demurrers

Plaintiffs' petitions for writ of mandate filed in the trial court were based on allegations that defendants materially failed to comply with the forfeiture statutes such that no valid forfeiture proceedings were ever conducted and, consequently, defendants must return plaintiffs' property.  Defendants' demurrers raised primarily procedural defenses to the petitions.  Despite the seemingly narrow focus of the demurrers, the broader legal background to the demurrer proceedings in the trial court was (i) the forfeiture statutes and (ii) our opinion in *Cuevas*.  Therefore, to better understand the legal context involved, we briefly summarize both of these matters.

12.

A.      Overview of the Forfeiture Statutes

California's Uniform Controlled Substances Act (§ 11000 et seq., the UCSA) is a "comprehensive scheme defining and setting the penalties for crimes involving controlled substances." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1069.) Chapter 8 of the UCSA, which is referred to herein as the forfeiture statutes, provides for the seizure and civil forfeiture of property obtained in connection with certain narcotics crimes (see §§ 11469–11495).[11] The purpose of the forfeiture statutes is "remedial by removing the tools and profits from those engaged in the illicit drug trade." (§ 11469, subd. (j).) Assets subject to forfeiture include personal property used to facilitate the production, distribution or sale of illegal drugs. (See §§ 11470, 11488, subd. (a).) Law enforcement officers may lawfully seize such property "without [judicial] process" in enumerated situations, including seizure incident to an arrest where there is probable cause to believe that the property was used or is intended to be used in violation of provisions of the UCSA. (§ 11471.)

Section 11488, subdivision (a), permits any peace officer, after making or attempting to make an arrest for certain drug crimes, to "seize any item subject to forfeiture" under section 11470. Subdivision (b) of section 11488 requires the police officer to issue a receipt for the property "to any person out of whose possession such property was seized." Subdivision (c) of section 11488 states that a presumption exists "that the person to whom the receipt for property was issued is the owner thereof." The presumption of ownership is one affecting burden of proof and "may… be rebutted at the forfeiture hearing specified in Section 11488.5." (*Ibid.*)

---

[11]      A few minor revisions and clarifications were made to certain sections of the forfeiture statutes in 2016, effective January 1, 2017, including to sections 11488.4 and 11488.5. (Stats. 2016, 2015-2016 Reg. Sess., ch. 831, §§ 3, 4.) These revisions do not impact the matters before us. Indeed, the relevant substantive provisions at issue in the present appeals, including the relevant portions of sections 11488.4 and 11488.5, remain unchanged.

Section 11488.1 authorizes the seized property to be held for evidence. As to the initiation of forfeiture proceedings, however, section 11488.1 directs that "The Attorney General or the district attorney for the jurisdiction involved shall institute and maintain the proceedings." (See *Cuevas*, *supra*, 221 Cal.App.4th at p. 1320.)

Section 11488.2 provides as follows: "Within 15 days after the seizure, if the peace officer does not hold the property seized pursuant to Section 11488 for evidence or if the law enforcement agency for which the peace officer is employed does not refer the matter in writing for the institution of forfeiture proceedings by the Attorney General or the district attorney pursuant to Section 11488.1, the officer shall comply with any notice to withhold issued with respect to the property by the Franchise Tax Board. If no notice to withhold has been issued with respect to the property by the Franchise Tax Board, the officer shall return the property to the individual designated in the receipt therefor or if the property is a vehicle, boat or airplane, it shall be returned to the registered owner."[12]

The statutory procedures for forfeiture are set forth in sections 11488.4 and 11488.5, which contemplate both judicial and nonjudicial forfeiture. Under section 11488.4, subdivision (a)(1), the Attorney General or district attorney may initiate judicial forfeiture by filing a petition of forfeiture in the superior court.[13] In judicial forfeiture, a person claiming an interest in the property is entitled to a jury trial. The government bears the burden of proving the property is subject to forfeiture.

---

[12] The forfeiture statutes expressly require the return of seized property to the owner thereof if the peace officer has not referred the matter in writing to the Attorney General or district attorney to initiate forfeiture proceedings, assuming also that the property is not being held as evidence or pursuant to a Franchise Tax Board notice. (§§ 11488.1 & 11488.2.) Additionally, the forfeiture statutes expressly require seized property to be returned where judicial forfeiture proceedings are conducted but the government fails to meet its burden of proving the elements of forfeiture. (See § 11488.5, subds. (b), (d) & (e).)

[13] Such a petition must be filed in the superior court "as soon as practicable, but in any case within one year of the seizure of the property which is subject to forfeiture …." (§ 11488.4, subd. (a)(2).)

14.

(§§ 11488.4, subd. (i), 11488.5, subds. (c)–(f).)  In addition, for some types of property, if forfeiture is contested, a judgment of forfeiture cannot be entered unless a defendant has been convicted of a related or underlying criminal offense.  (§ 11488.4, subd. (i)(3); see *People v. $10,153.38 in United States Currency* (2009) 179 Cal.App.4th 1520, 1524–1526.)

Meanwhile, section 11488.4, subdivision (j), creates a streamlined process for forfeiture without any judicial involvement, which is referred to as nonjudicial or administrative forfeiture.  (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1321.)  As with judicial forfeiture, nonjudicial forfeiture proceedings must be initiated by "[t]he Attorney General or the district attorney."  (§ 11488.4, subd. (j).)  However, nonjudicial forfeiture is available only if the value of the property at issue does not exceed $25,000.  (*Ibid*.)

Subdivision (j) of section 11488.4 sets forth the specific procedural requirements for nonjudicial forfeiture, as follows:

> "The Attorney General or the district attorney of the county in which property is subject to forfeiture under Section 11470 may, pursuant to this subdivision, order forfeiture of personal property not exceeding twenty-five thousand dollars ($25,000) in value.  The Attorney General or district attorney shall provide notice of proceedings under this subdivision pursuant to subdivisions (c), (d), (e), and (f), including:  [¶]  (1) A description of the property.  [¶]  (2) The appraised value of the property.  [¶]  (3) The date and place of seizure or location of any property not seized but subject to forfeiture.  [¶]  (4) The violation of law alleged with respect to forfeiture of the property.  [¶]  (5) [¶] (A) The instructions for filing and serving a claim with the Attorney General or the district attorney pursuant to Section 11488.5 and time limits for filing a claim and claim form.

> "(B) If no claims are timely filed, the Attorney General or the district attorney shall prepare a written declaration of forfeiture of the subject property to the state and dispose of the property in accordance with Section 11489.  A written declaration of forfeiture signed by the Attorney General or district attorney under this subdivision shall be deemed to provide good and sufficient title to the forfeited property.  The prosecuting agency ordering forfeiture pursuant to this subdivision shall provide a copy of the declaration of forfeiture to any person listed in the receipt given at

15.

the time of seizure and to any person personally served notice of the forfeiture proceedings.

"(C) If a claim is timely filed, then the Attorney General or district attorney shall file a petition of forfeiture pursuant to this section within 30 days of the receipt of the claim. The petition of forfeiture shall then proceed pursuant to other provisions of this chapter, except that no additional notice need be given and no additional claim need be filed."

The purpose for providing a streamlined process for nonjudicial forfeitures is "'to save the government the time and expense of a judicial proceeding in cases where the value of the property seized is small'" (*Nasir v. Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, 983 (*Nasir*)), and forfeiture is uncontested (*id.* at p. 985). If a claim is timely filed, however, nonjudicial forfeiture terminates and the only viable option for forfeiture at that point would be for the prosecutor to initiate *judicial* forfeiture within 30 days of receipt of the claim. "'The nonjudicial forfeiture proceeding is terminated … if anyone duly submits a claim to the seized property in response to the notice of nonjudicial forfeiture. If a claim is filed, the district attorney cannot pursue nonjudicial forfeiture but must initiate a judicial forfeiture proceeding'" if it wishes to effect a lawful forfeiture. (*Id.* at pp. 983–984, 990; § 11488.4, subd. (j).)

When seized property is lawfully forfeited by either judicial or nonjudicial forfeiture proceedings, section 11489 provides that the proceeds of forfeiture shall be distributed 65 percent to the law enforcement agency involved in the seizure, 24 percent to the state, 10 percent to the prosecutorial agency that processed the forfeiture proceedings, and 1 percent to a nonprofit organization. (§ 11489, subd. (b).) Out of the 65 percent share that would go to the law enforcement agency, a portion (i.e., 15 percent) thereof must be placed in a local fund used to combat drug abuse and divert gang activity. (*Ibid.*)[14]

---

[14]    Plaintiffs' request for judicial notice regarding the Attorney General's asset forfeiture report for 2014 is granted.

Finally, as we observed in *Cuevas*, *supra*, 221 Cal.App.4th at page 1322: "It is well settled that statutes imposing forfeitures are disfavored and, thus, those statutes are to be strictly construed in favor of the persons against whom they are sought to be imposed. [Citations.] 'This disfavor applies "notwithstanding the strong governmental interest in stemming illegal drug transactions …."'" (See i*d*. at p. 1327 ["'"strict compliance with the letter of the law by those seeking forfeiture [is] required"'"]; accord, *Nasir*, *supra*, 11 Cal.App.4th at p. 986.)

B.      Our *Cuevas* Opinion

Plaintiffs' petitions in the trial court seeking the return of property were largely based on our analysis and conclusions in *Cuevas*, *supra*, 221 Cal.App.4th 1312. Further, the trial court relied on our opinion in *Cuevas* to resolve one of the issues raised in defendants' demurrers. At this point in our discussion, we simply note the underlying facts in *Cuevas* and highlight some of the relevant portions of that decision.

In *Cuevas*, police officers seized several thousand dollars in cash from Adolfo Cuevas in conjunction with his arrest for possession of a controlled substance for the purpose of sale. Cuevas was brought to the police station for interrogation, and during the interrogation by one of the arresting officers, another police officer served a "'Notice of Nonjudicial Forfeiture Proceedings'" on Cuevas. (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1317.) The notice informed Cuevas that he must file a verified claim within 30 days or else the seized property would be ordered forfeited to the state. Cuevas did not file a claim. The Tulare County District Attorney charged Cuevas with simple possession of a controlled substance, which is not a crime for which forfeiture is authorized. While that charge was still pending, the Tulare County District Attorney declared that the seized cash was administratively forfeited to the state. Later, the criminal charges against Cuevas were dismissed in the face of a motion by Cuevas to suppress the evidence obtained from the search of his person and vehicle. Cuevas then filed a motion in the criminal case under Penal Code section 1538.5 to compel the return of his personal

17.

property. (*Cuevas*, *supra*, at pp. 1316-1319.) The trial court summarily denied the motion on the ground that the property "'was subject to a civil forfeiture proceeding'" and, therefore, the trial court believed it lacked jurisdiction to rule on the motion. (*Id.* at p. 1319.)

Cuevas sought appellate review by petitioning this court for writ of mandate. We granted the petition, thereby vacating the trial court's decision not to rule on the motion to compel the return of property. The matter was remanded to have the trial court set a new hearing for that motion. (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1333.) In getting to that result, we were highly critical of the public agencies' gross disregard of the statutory requirements for nonjudicial forfeiture. Among other things, we held that because the nonjudicial forfeiture proceedings were initiated by police officers, and not by the Attorney General or district attorney, the forfeiture was fatally invalid. (*Id.* at p. 1323.) "[B]ecause the forfeiture statutes must be strictly construed in favor of petitioner here, we hold the notice of nonjudicial forfeiture proceedings initiated by Officer Moreno of the Tulare Police Department was invalid." (*Id*. at pp. 1327–1328.) Moreover, we explained that the nature of the invalidity was *ab initio* or in the first instance: "We hold the forfeiture statutes require the initiation of forfeiture proceedings, and particularly notice and service of the notice, by a prosecuting agency—namely, the Attorney General or the district attorney—versus a law enforcement agency. Here then, because the notice of nonjudicial forfeiture proceedings was initiated by a member of the Tulare Police Department, the forfeiture proceeding was invalid *in the first instance*." (*Id*. at p. 1331, italics added.)

Because the nonjudicial forfeiture proceedings were invalid in the first instance, we rejected the People's argument that Cuevas's failure to file a claim opposing forfeiture precluded relief by the court. On that issue, we explained as follows: "The People contend petitioner had actual notice of the nonjudicial forfeiture proceedings and, thus, the fact he failed to file a claim precludes relief. It does appear petitioner received

actual notice of the nonjudicial forfeiture proceedings as his signature appears on that document acknowledging receipt of the notice and a copy of a claim form. Nonetheless, the defects in the notice and the procedure employed to give notice make this forfeiture proceeding invalid in the first instance. *Thus, whether petitioner filed a claim is not relevant to our determination here for there was no proper or valid forfeiture proceeding to which he could make a claim.* [¶] We agree with the *Nasir* court that "'the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required." [Citation.]' [Citation.]" (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1327, italics added.)

Having concluded the administrative forfeiture proceedings were invalid in the first instance, we turned to the appropriate remedy. (*Cuevas*, *supra*, 221 Cal.App.4th at pp. 1331–1332.) We noted that Cuevas had a right to bring the motion for return of property because subdivision (g)[15] of section 11488.4 provided authority for such a motion under the circumstances and Cuevas had adequately shown standing. (*Cuevas*, *supra*, at pp. 1331–1332.) We held that although the property had been declared forfeited and the proceeds released, the trial court retained jurisdiction over the property and could order its return because the property had been improperly or unlawfully released by the district attorney. "The district attorney's office should not be insulated from its series of errors .… Because the res was released improperly, the superior court has jurisdiction to consider petitioner's claim to the currency. Any other outcome would leave a claimant without recourse and would serve to deny the claimant due process of law." (*Id.* at p. 1332.) Accordingly, the case was returned to the trial court to hear Cuevas's motion.

---

**15**      Both subdivisions (g) and (h) of section 11488.4 authorize motions for return of property.

19.

## III. Demurrers for Failure to Exhaust Administrative Remedy

We now consider the particular grounds for demurrer asserted in the trial court and argued in the present appeal. We begin with defendants' contentions that plaintiffs failed to exhaust an administrative remedy set forth in the forfeiture statutes prior to filing their petitions for writ of mandate in the trial court. As to this ground for demurrer, the basic legal principles are well settled: "[I]f an administrative remedy is provided by statute, … such remedy must be exhausted before judicial review of the administrative action is available." (*Conservatorship of Whitley* (2007) 155 Cal.App.4th 1447, 1463). "Stated otherwise, 'exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts.' [Citations.] Until the administrative procedure has been invoked and completed, there is nothing that the trial court may do." (*Ibid*.)

Preliminarily, we agree with defendants that the forfeiture statutes do provide an administrative remedy in connection with nonjudicial forfeiture. Specifically, under section 11488.4, subdivision (j), when the Attorney General or district attorney initiates nonjudicial forfeiture proceedings, the notice of such proceedings must furnish certain information to the person whose property was seized, including "instructions for filing and serving a claim with the Attorney General or the district attorney pursuant to Section 11488.5 and time limits for filing a claim and claim form." (§ 11488.4, subd. (j)(5).) Any person claiming an interest in the property seized may file such a claim. (§ 11488.5, subd. (a)(1).) If a timely claim is filed, the Attorney General or district attorney must file a petition for forfeiture in the superior court within 30 days if a forfeiture is still sought. (§ 11488.4, subd. (j)(5)(C).) In other words, once a claim is timely filed, "'[t]he nonjudicial forfeiture proceeding is terminated'" and "'the district attorney cannot pursue nonjudicial forfeiture but must initiate a judicial forfeiture proceeding.'" (*Nasir*, *supra*, 11 Cal.App.4th at pp. 983–984, 990.) Under this statutory scheme, a claimant filing a timely claim will receive his or her property back (assuming it is not being held as evidence) unless the prosecuting agency files a petition for judicial

forfeiture within 30 days, in which case the claimant is guaranteed a jury trial wherein the government bears a heavy burden of proof.[16]  So understood, we agree with defendants that subdivision (j) of section 11488.4 provides an administrative remedy or recourse to persons claiming an interest in the seized property whenever nonjudicial forfeiture proceedings are initiated by the Attorney General or district attorney.[17]

Defendants contend that because this administrative remedy existed in the abstract, plaintiffs' petitions for writ of mandate were barred (for failure to exhaust) because plaintiffs never filed claims to oppose the nonjudicial forfeiture of their property. Under the circumstances presented here, defendants' contention cannot be sustained.  The gaping hole in defendants' argument is precisely the same one that existed in *Cuevas*: there were no valid forfeiture proceedings in existence within which to file such claims for purposes of exhaustion of remedies.  That was so because police officers or sheriff's deputies cannot lawfully or validly initiate forfeiture proceedings under the forfeiture statutes; only prosecuting agencies (i.e., the Attorney General or district attorney) have been given that power or authority.  (§§ 11488.1, 11488.2, 11488.4, subds. (a) & (j); *Cuevas*, *supra*, 221 Cal.App.4th at pp. 1316, 1323–1331.)[18]  Consequently, the purported

---

[16]     Conversely, if no timely claim is filed, the Attorney General or district attorney is entitled to prepare and execute a written declaration of forfeiture, declaring the property to be forfeited to the state.  (§ 11488.4, subd. (j)(5)(B).)

[17]     Accordingly, where such proceedings were initiated by the prosecuting agency, a claim must be filed under section 11488.4, subdivision (j) as a prerequisite to seeking judicial relief through mandamus.  (See, e.g., *Nasir*, *supra*, 11 Cal.App.4th at p. 989, fn. 9 [filing a claim is a prerequisite to a plaintiff's right to seek relief though mandate].)

[18]     Police officers may serve a notice issued by the Attorney General or district attorney, but police officers have no authority to initiate the proceedings and issue notice on their own. (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1328, fn. 8.)  As we clarified in *Cuevas*:  "We do not hold that Officer Moreno, if the forfeiture decision had been made by an appropriate prosecuting agency, could not have properly served the notice of forfeiture on behalf of the prosecuting agency in the role of a process server. [Citation.]  Rather, his service of the notice of forfeiture was invalid because an appropriate prosecuting agency did not initiate it, and neither he nor the Tulare Police Department had the authority to initiate the process or serve notice in their own right."  (*Ibid*.)

nonjudicial forfeiture proceedings in the several cases under consideration, having been initiated solely by police officers or deputies, were "invalid in the first instance." (*Cuevas*, *supra*, at pp. 1327, 1331.) As a result, just as in *Cuevas*, the question of whether plaintiffs filed a claim "is not relevant to our determination here for there was no proper or valid forfeiture proceeding to which [the plaintiffs] could make a claim." (*Id.* at p. 1327.)

In an effort to salvage their asserted defense of failure to exhaust administrative remedies, defendants rely heavily on *United States v. Superior Court* (1941) 19 Cal.2d 189 (*United States*). We conclude that such reliance is misplaced. In *United States*, certain shippers, orange growers and handlers (the complainants) sought to enjoin the enforcement of a marketing order issued by the United States Secretary of Agriculture pursuant to the Agricultural Marketing Agreement Act of 1937 (7 U.S.C. § 601 et seq., the Act). (*United States*, *supra*, at pp. 192–193.) According to the complaint filed by the complainants in that case, the order issued by the Secretary of Agriculture was allegedly *void* because it was "not approved by the requisite number or percentage of growers as specified in the [A]ct, the Secretary of Agriculture having accepted certain votes unlawfully cast by the California Fruit Growers Exchange on behalf of certain producers." (*Id.* at p. 193.) In response to the complaint, the United States filed an original proceeding in prohibition to the California Supreme Court, challenging the jurisdiction of the trial court to grant any relief because the complainants had failed to exhaust the administrative remedies provided under the Act. (*United States*, *supra*, at p. 193.) The complainants countered that exhaustion of administrative remedies applied only with respect to erroneous orders, not orders alleged to be a nullity because illegally adopted. The California Supreme Court rejected this distinction and agreed with the United States, holding that "there is no substantial difference, insofar as the necessity for resort to administrative review is concerned, between an erroneous order and one which, it is claimed, is being executed in violation of statutory authority." (*Id.* at p. 194.) To

22.

illustrate the point, the Supreme Court noted further that "even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief." (*Id.* at p. 195.) In short, it was held that the complainants could not evade the requirement to exhaust their administrative remedies by merely alleging that the order issued by the Secretary of Agriculture was "void" on the ground it was not approved by the requisite number of growers. (*Id.* at pp. 194–198.)

The Supreme Court further explained in *United States* that the controversy in that case was precisely the type of factual and procedural dispute for which administrative review under the Act was contemplated, and to allow the exhaustion requirement to be ignored in such cases on the pretext that the order was void would render the Act's administrative remedy ineffective: "The plaintiffs in the injunction proceeding do not question the constitutionality of the … Act …; they do not dispute the authority of the Secretary of Agriculture nor do they question the existence of a validly created administrative remedy. They seek only a review of a particular order which they assert was not adopted in conformity with the requirements of the statute. The question whether this order complies with the legislative mandates is essentially one of fact and is nonjusticiable until those claiming to be aggrieved have secured a final administrative determination of their rights. The … Act … gives a dissatisfied handler a hearing before the Secretary of Agriculture and a right of review of the secretary's ruling in the United States District Court whenever he attacks an order as 'not in accordance with law.' The relief sought by the petitioners in the present proceeding is the same as that which the Secretary of Agriculture might give, and to adopt the contention of respondent would render the provision for administrative review ineffective." (*United States*, *supra*, 19 Cal.2d at p. 196.)

As should be apparent from the above summary, the facts in *United States* are profoundly distinguishable from those that were alleged in plaintiffs' petitions in the

matter before us. In *United States*, the government official or agency issuing the challenged marketing order (i.e., the Secretary of Agriculture) *had statutory authority* to issue such orders, and the only question was whether the statutory requirements for the issuance thereof were fully met in that particular instance. (*United States*, *supra*, 19 Cal.2d at pp. 193–196.) Here, in contrast, persons having no statutory power or authority to initiate nonjudicial forfeiture proceedings purported to do so; that is, police officers and sheriff's deputies attempted to commence nonjudicial forfeiture proceedings in their own right and on their own initiative—proceedings that, under the clear terms of the forfeiture statutes, may only be initiated by an appropriate prosecuting agency (i.e., the Attorney General or district attorney). (§§ 11488.1, 11488.2, 11488.4, subds. (a) & (j); *Cuevas*, *supra*, 221 Cal.App.4th at pp. 1316, 1323–1331.) Exhaustion of administrative remedies does not apply in these circumstances because the supposed forfeiture proceedings do not carry any force of law since the persons initiating them were devoid of statutory authority to act. Moreover, at the risk of stating the obvious, we would stress that this fundamental lack of statutory authority to initiate forfeiture proceedings by those purporting to do so came within the context of *forfeiture* statutes, which statutes are disfavored, are strictly construed in favor of the person against whom forfeiture is sought, and must always be rigidly adhered to by the agency seeking to effectuate that drastic remedy. (*Cuevas*, *supra*, at pp. 1322, 1327; *Nasir*, *supra*, 11 Cal.App.4th at p. 986.) For all of these reasons, *United States* does not dissuade us from the views that we articulated in *Cuevas* on this issue, and which we reaffirm and apply here.

We conclude that, under the unique circumstances presented here, plaintiffs were not required to file a claim under the forfeiture statutes in order to pursue the return of their property in the trial court. Accordingly, defendants' demurrers on the ground of failure to exhaust administrative remedies were correctly overruled by the trial court.

## IV. Demurrers Based on Failure to File a Government Claim

A second ground for demurrer raised by defendants was that plaintiffs' actions were barred due to failure to file a government claim with the public entity defendants pursuant to the Government Claims Act. Under the Government Claims Act, subject to certain exceptions, claims for money or damages against local public entities must be presented to such entities. (Gov. Code, § 905; *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990.) Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within one year. (Gov. Code, § 911.2, subd. (a); *DiCampli-Mintz v. County of Santa Clara*, *supra*, at p. 990.) Further, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented … until a written claim therefor has been presented to the public entity and has been acted upon … or has been deemed to have been rejected …." (Gov. Code, § 945.4.) "'Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.'" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.)

The defect in defendants' argument is that the Government Claims Act applies only to "claims for money or damages." (Gov. Code, § 905.) Here, as the trial court correctly found, plaintiffs sought the return of seized personal property, not damages. Therefore, the Government Claims Act was inapplicable.

Our conclusion on this issue is supported by *Minsky*, *supra*, 11 Cal.3d 113, a case similar to the consolidated appeals presently before us. In *Minsky*, the plaintiff sought the return of money seized by the police from an arrested person and allegedly diverted to the Policeman's and Fireman's Pension Fund after the criminal charges were resolved. (*Id.* at pp. 116–118.) The Supreme Court held that such a claim for the recovery of specific property is not one for money or damages under the Government Claims Act. (*Minsky*, *supra*, at pp. 121, 124.) Further, even if the cash or currency taken from the arrestee was

25.

no longer traceable, the Supreme Court explained in *Minsky* that the "initial exemption of the action from the claims statute is not lost simply because the city takes the further wrongful step of disposing of the bailed property. The city cannot be permitted to invoke the claims statute, originally not available to it, by virtue of a later wrongful dissipation of the property. To so hold would be in effect to allow the local entity to profit by its own wrong, penalizing a plaintiff who, in light of the specific recovery remedy apparently available to him, justifiably did not file a claim." (*Id.* at pp. 121–122, fn. 14.) The Supreme Court concluded in *Minsky* as follows: "[A] complaint, seeking the recovery of property seized and wrongfully withheld by [government] defendants, does not involve a claim for 'money or damages' within the meaning of [Government Code] section 905, and thus would not fall within the presentation requirements of [Government Code] sections 911.2 and 945.4." (*Id.* at p. 124, fn. omitted; accord, *City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 742; *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 506–512.)

*Minsky* is plainly applicable here, where plaintiffs sought the return of specific property seized by police and allegedly wrongfully retained by defendants who failed to follow the forfeiture statutes regarding nonjudicial forfeiture. Therefore, we conclude that the trial court correctly overruled defendants' demurrers based on the Government Claims Act.

## V.     Demurrers Based on Statute of Limitations

Finally, defendants demurred to plaintiffs' petitions for writ of mandate on statute of limitations grounds. Because mandamus is an extraordinary remedy that is available to enforce a number of rights and obligations, the applicable statute of limitations generally depends on the right or obligation involved. (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 684, pp. 902–903; *Allen v. Humboldt County Bd. of Supervisors* (1963) 220 Cal.App.2d 877, 884.) Defendants argued that the applicable statute of limitations

26.

was Code of Civil Procedure section 340, which provides a *one-year* limitations period in the following types of actions:

> "(a)   An action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation.

> "(b)   An action upon a statute for a forfeiture or penalty to the people of this state.  [¶] … [¶]

> "(d)   An action against an officer to recover damages for the seizure of any property for a statutory forfeiture to the state, or for the detention of, or injury to property so seized, or for damages done to any person in making that seizure."

The trial court agreed with defendants' position that the above one-year statute of limitations was applicable to plaintiffs' petitions.  In so holding, the trial court reasoned that since plaintiffs alleged that defendants failed to comply with a forfeiture statute (i.e., § 11488.4, subd. (j)), the petitions constituted "action[s] upon a statute for a forfeiture or penalty" as described in Code of Civil Procedure section 340, subdivision (b).

On appeal, plaintiffs contend the trial court erred in its interpretation or application of Code of Civil Procedure section 340, subdivision (b).  Plaintiffs are correct. According to the explicit terms of subdivision (b) of section 340, it is applicable to actions "upon a statute for a forfeiture or penalty" to the state.  The phrase "*for* a forfeiture or penalty" (Code Civ. Proc., § 340, subd. (b), italics added ) is clear and unambiguous, and refers to a suit *seeking* a forfeiture or penalty, while the phrase "upon a statute" can only mean that the forfeiture or penalty being sought is *based on* a statute providing such a remedy.[19]  "When the language of the statute is clear, we need go no

---

[19]    Our survey of cases applying subdivisions (a) or (b) of Code of Civil Procedure section 340 reflects that, in each case, the plaintiff or plaintiffs therein were seeking the recovery of either a penalty or a forfeiture pursuant to a statute.  (See, e.g., *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 972 [statute imposing civil penalties for violation of Safe Drinking Water and Toxic Enforcement Act of 1986 (§ 25249.5 et seq.)]; *Prudential Home Mortgage Co. v. Superior Ct.* (1998) 66 Cal.App.4th 1236, 1240 [$300 statutory forfeiture]; *Menefee v. Ostawari* (1991) 228 Cal.App.3d 239, 243-244 [treble damages for violation of rent

27.

further" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340); that is, "[i]f the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs" (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190). Because plaintiffs' petitions filed in the trial court were *not* statutory actions seeking a forfeiture or penalty, but instead were actions or proceedings for the return of specific personal property, the statute of limitations set forth in subdivision (b) of Code of Civil Procedure section 340 was plainly inapplicable. The same conclusion must follow with respect to the virtually identical language of subdivision (a) of Code of Civil Procedure section 340. Finally, we agree with plaintiffs that subdivision (d) of Code of Civil Procedure section 340 was likewise inapplicable to plaintiffs' pleadings because that subdivision expressly relates to actions for *damages*, which was not the case (or cases) here. Again, plaintiffs' actions were not for damages, but were equitable in nature and sought the specific recovery of personal property that had been previously seized by police officers.[20] Based on the foregoing, the trial court

---

control ordinance]; *G.H.I.I. v. MTS, Inc*. (1983) 147 Cal.App.3d 256, 276-279 [treble damages for violation of Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.)]; *People v. Grant* (1942) 52 Cal.App.2d 794, 796 (*Grant*) [government sought statutory forfeiture of funds seized in slot machines].) On the other hand, where the remedy sought did not involve such a forfeiture or penalty, said statutory provisions were not applicable. (See, e.g., *Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1099, 1114.)

[20] In the event that defendants are ultimately unable to return the personal property to plaintiffs because they (defendants) improperly or wrongfully dissipated the same, that fact would not by itself change the essentially equitable nature of plaintiffs' petitions for specific recovery. (See, e.g., *Minsky*, *supra*, 11 Cal.3d at pp. 121–122, fn. 14; *Holt v. Kelly* (1978) 20 Cal.3d 560, 565.) In *Holt v. Kelly*, the Supreme Court granted a writ of mandate directing the respondent in that case to return the seized property, but the court further ordered that "if [the] respondent is unable to do so, to deliver to [the] petitioner the value thereof, i.e., the sum of $500." (*Holt v. Kelly*, *supra*, at p. 566.) Similarly, here, although payment of value in lieu of specific recovery of the property may become necessary to make plaintiffs whole if the property cannot be located, the availability of that form of relief does not necessarily convert the petitions for writ of mandate into actions for damages. On balance, we see no reason to treat plaintiffs' claims as anything other than what they purport to be—equitable petitions for specific relief seeking the return of property—and defendants have failed to offer any compelling argument to the contrary.

erred in holding that Code of Civil Procedure section 340 was the applicable statute of limitations.

The correct statute of limitations in the cases before us in this consolidated appeal was Code of Civil Procedure section 338, subdivision (c)(1), which provides a *three-year* limitation period for "[a]n action for taking, detaining, or injuring goods or chattels, *including actions for the specific recovery of personal property*." (Italics added.) We are convinced that section 338, subdivision (c), was applicable here because the gravamen of plaintiffs' actions filed in the trial court was plainly "for the specific recovery of personal property." (Code Civ. Proc., § 338, subd. (c)(1).) Moreover, the conclusion we reach on this issue is supported by the conclusion reached by the Supreme Court on similar facts in *Minsky*. In *Minsky*, where personal property was lawfully seized by police officers but was not returned to the owner after disposition of the criminal charges, the Supreme Court held that Minsky's claim for specific recovery of the seized property was governed by said three-year statute of limitations. (*Minsky*, *supra*, 11 Cal.3d at p. 119, fn. 6 [where substance of suit was "for the return of specific money," it was governed by Code Civ. Proc., § 338, former subdivision (3), now designated as subdivision (c)].)

Similarly, in *Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077 (*Coy*), personal property was seized from Coy by sheriff's deputies pursuant to a search warrant. Coy was charged and convicted of receiving stolen property, but all charges were later dismissed following Coy's successful appeal. At some point, Coy made motions in the trial court seeking return of his property under Penal Code section 1538.5 and other statutes, but those motions were denied. Later, Coy filed a complaint in the superior court alleging several causes of action, including claim and delivery (i.e., return of personal property) and conversion. The defendant, County of Los Angeles, brought a motion for summary judgment on the ground that the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (c), had expired. That motion was denied, and the defendant appealed. (*Coy*, *supra*, at pp. 1082–1084.)

The Court of Appeal in *Coy* agreed that the three-year statute of limitations set forth in Code of Civil Procedure section 338, subdivision (c), was applicable to the causes of action for claim and delivery or conversion. (*Coy*, *supra*, 235 Cal.App.3d at p. 1087.) On the further issue of *when* the limitations period would begin to run, the court first acknowledged, based on *Minsky*, that "[t]he government is a bailee when a peace officer seizes property from an arrestee." (*Coy*, *supra*, at p. 1087, citing *Minsky*, *supra*, 11 Cal.3d at pp. 121–122.) The existence of a bailment setting was used by the court to define when the statute of limitations would be triggered: "In the case of a bailment, when an original taking is wrongful, the statute of limitations begins to run from the time of the unlawful taking.… When, on the other hand, the original taking is lawful, the statute of limitations for conversion or claim and delivery does not begin to run 'until the return of the property has been demanded and refused or until a repudiation of the owner's title is unequivocally brought to [her or] his attention.'" (*Coy*, *supra*, at pp. 1087–1088, fn. omitted.)

Here, plaintiffs' petitions alleged that police officers or deputies in each case *lawfully* seized plaintiffs' personal property. Applying the rule stated in *Coy*, not only would defendants hold plaintiffs' personal property as bailee(s), but the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (c), would not begin to run until either (i) the return of the property has been demanded and refused or (ii) a repudiation of the owner's title is unequivocally brought to his or her attention. Nothing in the petitions' allegations indicated that any plaintiffs previously demanded return of the property and were refused. Rather, for purposes of demurrer, and upon giving the pleadings a reasonable construction, it appears that the first occasions after seizure of the property on which actual *repudiation* of each plaintiff's title was unequivocally brought to his attention was when the district attorney subsequently issued a final declaration of forfeiture, thereby formally declaring that said plaintiff's personal property was forfeited to the state. Therefore, on the record before us, the triggering date

30.

for purposes of the three-year statute of limitations was the issuance of the declarations of forfeiture by the district attorneys. In each of the cases before us, plaintiffs' petitions were filed within the three-year period following the issuance of the declarations of forfeiture by the district attorneys. Therefore, the demurrers based on the statute of limitations should have been overruled, and the trial court reversibly erred in concluding otherwise.

Having reached the above conclusions on this issue, we briefly highlight one additional case as a postscript to our discussion; namely, *Grant*, *supra*, 52 Cal.App.2d 794. The factual and procedural background in *Grant* was as follows: In December 1937, the San Luis Obispo County Sheriff had seized certain slot machines that admittedly were being operated illegally by the defendant, Grant. The sum of $404.66 in coins was taken from the slot machines and deposited with the county auditor. For nearly two years, no action seeking forfeiture of the money was commenced by the People. Finally, on November 1, 1939, the People filed an action for forfeiture of the money to the state. Grant responded by filing an answer and a cross-complaint. In his answer, Grant asserted that the People's forfeiture action was barred by the one-year statute of limitations under section 340 of the Code of Civil Procedure. In his cross-complaint, Grant affirmatively sought the return of his property (i.e., the $404.66). The trial court found that the People's forfeiture action was barred by the one-year statute of limitations under section 340 of the Code of Civil Procedure, but it granted relief on Grant's cross-complaint, holding that the money was owned by Grant, it was being unlawfully detained by the county, and it must be returned to Grant. A judgment was entered in favor of Grant, and the People appealed. (*Grant*, *supra*, at p. 796.)

The Court of Appeal in *Grant* affirmed both of the trial court's rulings. First, it agreed that the People's action for forfeiture was time barred by section 340, former subdivision 2, which imposed a one-year statute of limitations period on "'[a]n action upon a statute … for a forfeiture or penalty to the people of this State.'" (*Grant*, *supra*,

31.

52 Cal.App.2d at pp. 796, 798.)  Second, on the question of whether Grant was entitled, under his cross-complaint, to the return of his money, the Court of Appeal emphatically declared there was no tenable basis "for answering that query other than in the affirmative." (*Id*. at p. 801.)  In so holding, the Court of Appeal repudiated the notion that the government's provisional right to hold lawfully seized money or other personal property "continues unabated" whether or not the government files a forfeiture action or is barred by the statute of limitations from doing so.  (*Id*. at p. 801.)  Further, since no forfeiture action was filed and conducted, title to the property remained in Grant.  (*Id*. at pp. 801–802.)  The Court of Appeal explained that, having lost all right to forfeiture by neglecting to file a timely forfeiture action, and since no other statutory authority permitted its retention of the property, the government had no further claim of right to hold the property owned by Grant and, thus, the county was correctly required to return it or pay its value.  (*Id*. at pp. 802–804.)[21]

We believe the outcome in *Grant* is worthy of mention in connection with the present discussion because of its consistency with the conclusion we have reached herein concerning the statute of limitations—i.e., that Code of Civil Procedure section 338, subdivision (c), was applicable, and *not* section 340 of that same code.  Admittedly, the opinion in *Grant* did not address the issue of the statute of limitations regarding the cross-complaint filed by Grant, but only the People's action for forfeiture.  Nevertheless, it is difficult to ignore that the one-year statute of limitations under Code of Civil Procedure section 340 was applied to the People's action for forfeiture, but not to Grant's cross-complaint for return of seized property.  Both pleadings were filed some two years after

---

[21]     Furthermore, it was pointed out in *Grant* that since the government by its own neglect failed to pursue a timely forfeiture action, which action was provided by law for the purpose of ensuring due process in such seizure cases, to construe the relevant statutory provisions as somehow giving the government a right to retain such property regardless of its failure to engage in that necessary process would give to those statutes an unconstitutional power and effect. (*Grant*, *supra*, 52 Cal.App.2d at pp. 801–802.)

the property was seized.  Hypothetically, if Code of Civil Procedure section 340 *also* applied to the cross-complaint, it is strange that no mention was made of that fact in *Grant*.  Although we do not rely on such matters as to which the opinion in *Grant* was silent, nor do we need to do so to support the conclusions we have drawn, we simply observe that the different treatment of the cross-complaint in that case is remarkably consistent with the conclusion we have reached herein that actions for recovery of personal property seized by police officers would not be governed by the one-year statute of limitations set forth in section 340 of the Code of Civil Procedure, but would come under a *different* statute of limitation (i.e., Code Civ. Proc., § 338, subd. (c) [a three-year statute of limitations]).

To reiterate our determinations on this issue, the trial court erred in sustaining the demurrer on statute of limitations grounds.  The one-year statute of limitations under section 340 of the Code of Civil Procedure was not applicable to plaintiffs' petitions filed in the trial court.  Instead, the three-year statute of limitations set forth in section 338, subdivision (c), of the Code of Civil Procedure was applicable, and plaintiffs' petitions were, for the reasons explained above, timely filed under that latter statute.

## **DISPOSITION**

The judgments of the trial court are reversed in each of the consolidated actions herein.  The trial court is directed to enter new orders overruling defendants' demurrers in each action.  Costs on appeal are awarded to plaintiffs.

_____
KANE, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
FRANSON, J.