Filed 5/31/22  Tanguma v. Bank of New York Mellon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| YVETTE M. TANGUMA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BANK OF NEW YORK MELLON,<br><br>Defendant and Respondent. | F081980<br><br>(Super. Ct. No. VCU283576)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan D. Ide, Judge.

Romaine Lokhandwala Law Group, William A. Romaine and Zishan Lokhandwala for Plaintiff and Appellant.

Yu | Mohandesi, Pavel Ekmekchyan, Kristel A. Robinson; Klinedinst and Neeru Jindal for Defendant and Respondent.

-ooOoo-

Plaintiff Yvette M. Tanguma appeals after her complaint was dismissed on demurrer. This is the second time a dispute between these parties has come before this court. Underlying both litigations is plaintiff's attempt to prevent or reverse foreclosure proceedings resulting in the sale of her home. In her prior appeal, plaintiff attempted to rely on a series of technical arguments to contend that the trustee attempting to sell her home lacked authority to do so. This court rejected plaintiff's arguments on the basis that plaintiff only alleged facts that made the contested transactions voidable. Under the law, this meant she lacked standing to pursue an action to prevent the foreclosure sale. In this litigation, relying on the same core factual assertions, plaintiff alleges she can proceed with a lawsuit for breach of contract and unlawful foreclosure because the foreclosure sale has been completed and, thus, she has been harmed. Plaintiff, however, either misunderstands or is misconstruing this court's prior opinion and the relevant case law. As this court discussed extensively in the context of her preforeclosure suit, the basis for her lack of standing to proceed is not a lack of harm but a lack of legal authority to enforce the error alleged. The trial court in this case found plaintiff's arguments failed to overcome this court's basis for affirming dismissal in the prior action and thus granted the demurrer by defendant The Bank of New York Mellon (BNY).[1] For the reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

As noted, this is the second time a dispute between these parties has come before this court. The parties and this court are extensively familiar with the prior action, which resulted in an opinion affirming dismissal following a demurrer of plaintiff's complaint seeking to prevent the then-pending foreclosure sale of her home. (*Tanguma v. Law Offices of Les Zieve* (Jan. 29, 2020, F075930) [nonpub. opn.] (*Tanguma*).) We therefore

---

[1]    BNY was referred to in the judgment as "The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc. Asset-Backed Certificates, Series 2006-QH1."

only briefly discuss the background of that action and generally refer to those portions of the prior opinion relevant to the present dispute. We incorporate by reference the opinion in the prior action in full, however, for completeness.

*Background on the Prior Action*

As detailed in this court's nonpublished opinion, plaintiff filed the prior action in the trial court to prevent the foreclosure of a deed of trust (the deed of trust) plaintiff executed as security for a $247,000 loan (the promissory note) by Quality Home Loans, Inc. (Quality). (*Tanguma*, *supra*, F075930, typed opn. at p. 2.) Plaintiff did not deny she materially defaulted on the loan but claimed "the persons initiating the nonjudicial foreclosure process against her had no right or authority to do so because the assignments of the promissory note and deed of trust were allegedly void." (*Ibid*.) In that action, plaintiff argued the relevant assignments were improper because a document referred to as an " 'Allonge' " transferring rights to BNY and purportedly signed by Quality's assistant vice president was improper—because either the signer lacked authority to sign or did not actually sign, potentially because the document was "robo-signed." (*Id*. at pp. 3–4.) Plaintiff also alleged that a separate assignment from a company known as Mortgage Electronic Registration Systems, Inc. (MERS) to BNY was improper because MERS "had no such rights to assign and/or only the lender (or the lender's assignee)— i.e., those with an actual beneficial interest in the promissory note—could exercise or assign the rights pertaining to the beneficial interest in the deed of trust." (*Id*. at p. 4.) Plaintiff alleged these transfers were void *ab initio* and thus that all later actions leading to the foreclosure sale were also void. (*Id*. at pp. 4–5.) To assert her rights and prevent the pending sale, plaintiff filed suit seeking injunctive relief, declaratory relief, and to vacate the notice of default. (*Id*. at p. 5.) BNY successfully demurred and the prior appeal followed. (*Id*. at p. 6.)

*This Court's Analysis in the Prior Action*

In resolving the prior action, this court concluded that plaintiff lacked standing to preempt the nonjudicial foreclosure process. Reviewing the case law then existing on attempts to prevent nonjudicial foreclosure sales, this court explained that the nonjudicial foreclosure process is not subject to preemptive attack due to the comprehensive nature of its legislative scheme. (See *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154–1155; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511–513 (*Jenkins*).) In a relevant footnote, however, this court recognized *Gomes*'s statement that postforeclosure judicial actions may be available when such claims are not inconsistent with the policies behind the statutes. (See *Gomes*, at p. 1154, fn. 5.)

This court then explained that in addition to the statutory issues with preforeclosure lawsuits, a separate standing issue arose when a plaintiff sought to challenge the alleged improper transfer of the promissory note or deed of trust on the part of third parties during the securitization process. (See *Jenkins*, *supra*, 216 Cal.App.4th at pp. 514–515.) This court noted that *Jenkins* had broadly asserted that no standing could ever arise in such situations, but that this statement had been disapproved in the recent California Supreme Court ruling in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, footnote 13 (*Yvanova*). As this court explained, while *Yvanova* "disapproved *Jenkins*'s conclusion that a borrower would lack standing to challenge an assignment of the deed of trust as *void*," the "Supreme Court noted the *Jenkins*'s rule [on standing] may still hold as to claimed defects that would make the assignment merely voidable." (*Tanguma*, *supra*, F075930, typed opn. at p. 14.)

Because plaintiff was then pursuing a preforeclosure lawsuit, and *Yvanova* had recently affirmed the ability to pursue a postforeclosure lawsuit when the underlying transaction was void and not merely voidable, this court spent considerable time discussing the holding of *Yvanova* and its application to wrongful foreclosure actions. As

4.

this court wrote, "In resolving the question of whether a borrower has standing in a wrongful foreclosure action to challenge an assignment to which he or she was not a party, the answer given by the Supreme Court was that the borrower has standing if the alleged assignment is void, but not if the assignment is merely voidable. (*Yvanova, supra*, 62 Cal.4th at pp. 923, 939, 943.) The Supreme Court explained: '[O]nly the entity holding the beneficial interest under the deed of trust—the original lender, its assignee, or an agent of one of those—may instruct the trustee to commence and complete a nonjudicial foreclosure. [Citations.] If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever [citations], the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure.' (*Yvanova, supra*, 62 Cal.4th at p. 935.) Because a void assignment is without any effect, it can never be ratified or validated by the parties to it, even if they wished to do so. (*Id*. at p. 936, see also pp. 929–930.) '[N]o ratification is possible if the assignment is void *ab initio*.' (*Id*. at p. 936.) Accordingly, a borrower asserting that an assignment is void *ab initio* is not asserting interests properly belonging to the parties to the assignment—no such third-party interests would exist—but is asserting solely her own interest in limiting foreclosure on her property to those with legal authority to order a foreclosure sale. (*Id*. at pp. 936–937.)

"On the other hand, when an assignment is merely *voidable*, 'the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself.' (*Yvanova, supra*, 62 Cal.4th at p. 936.) As one Court of Appeal expressed this aspect of *Yvanova's* holding: 'Only the parties to the agreement have the power to ratify or extinguish; consequently, allowing a

borrower to challenge an assignment based on a defect that only renders it voidable would allow the borrower to exercise rights belonging exclusively to the parties to the assignment.' (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 810–811 (*Mendoza*).)" (*Tanguma*, *supra*, F075930, typed opn. at pp. 18–19.)

Following this legal discussion, this court turned to the allegations plaintiff had raised in her preforeclosure complaint. This court began by discussing the dispute over the Allonge. This court noted that plaintiff's allegations were mere conclusions lacking factual support but also explained that even if accepted as true, a robo-signed Allonge would create a voidable, not a void, transaction. Although plaintiff had alleged a void transaction, this court was not bound by such purely legal conclusions. (See *Mendoza v. JPMorgan Chase Bank, N.A.*, *supra*, 6 Cal.App.5th at pp. 809–810.)

After rejecting the Allonge theory as a viable claim, this court looked at plaintiff's "other assignment challenged," "MERS's assignment of the beneficial interest in the deed of trust to" BNY. (*Tanguma*, *supra*, F075930, typed opn. at p. 21.) This court detailed plaintiff's assertions that "the assignment by MERS was void or invalid … on the theory that MERS had no power to assign rights it did not possess itself." (*Ibid*.) This court noted plaintiff's contention that MERS was not "the lender or lender's assignee" because it "was merely a nominee, and therefore the purported assignment was allegedly ineffectual." (*Ibid*.) This court then fully rejected those factual claims.

Looking at the deed of trust, which had been attached to the first complaint,[2] this court noted that "plaintiff expressly agreed that MERS was both the 'nominee for Lender and Lender's successors and assigns' as well as 'the beneficiary under this Security Instrument.' " (*Tanguma*, *supra*, F075930, typed opn. at pp. 21–22.) This court also explained, "the deed of trust reflected that MERS may assign its interest under the deed

---

[2]    As noted below, plaintiff has also attached the deed of trust to this action. We have been pointed to no differences between the documents attached to each action and neither party alleges they are different.

6.

of trust." (*Id*. at p. 22.) This court then rejected plaintiff's legal conclusion that such language created a void transaction in a lengthy discussion of relevant facts and case law. In summary, this court explained: (1) that "plaintiff agreed in the deed of trust that MERS was both the 'beneficiary' and the 'nominee' of the lender and of the lender's successors and assigns for purposes of the deed of trust" (*ibid*.); (2) that courts "have repeatedly recognized that the inclusion of such language in a deed of trust is sufficient to allow MERS to exercise rights under the deed of trust as the lender's agent" (*ibid*.); (3) that plaintiff's assertion of a "lack of power or authority to assign the deed of trust to BNY is plainly without merit" (*id*. at p. 23); (4) that under *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82, a trustor who agreed that MERS had authority to exercise the lender's rights is precluded from maintaining an action based on the allegation MERS had no authority to exercise those rights; (5) that no more specific allegations could cure this problem "since it is apparent plaintiff is relying on a version of the possession of the note theory, which has been soundly rejected by relevant California case authority" (*Tanguma*, typed opn. at p. 24); and (6) any challenge to MERS assignment of the promissory note would also necessarily fail as "it is analogous to a claim of a merely voidable defect in a transaction between third parties that plaintiff would lack standing to raise" (*id*. at p. 25). This court concluded it analysis by stating "contrary to the allegations in the [first amended complaint], MERS had authority from the language of the deed of trust to assign the beneficial interest in the deed of trust to BNY. On the record before us, that assignment was not void, but was valid and effective." (*Ibid*.)

This court proceeded to resolve several other issues relevant to the prior case before closing its opinion by discussing a fact plaintiff had withheld during the briefing

and until oral argument: that the alleged pending foreclosure sale had been completed by the point of argument. This court's response follows:

"Finally, we briefly address plaintiff's counsel's surprise statement at oral argument. As we observed in footnote 2, *ante*, at the oral argument for this appeal, plaintiff's counsel made an assertion to the effect that the trustee's sale had apparently occurred in July of last year, more than six months prior to oral argument, but plaintiff's counsel refrained from informing this court thereof until his appearance before us at oral argument. As noted previously herein, we have disregarded this barren last minute oral claim by counsel as untimely raised. [Citation.] Nonetheless, even if we were to consider the matter, and even assuming the purported information is accurate, it would not salvage plaintiff's case. As our discussion herein has made clear, the challenged third-party assignments referred to in the [first amended complaint] were at most voidable, not void, and therefore plaintiff would lack standing to bring even a *postforeclosure* challenge. [Citations.] Because plaintiff has failed to meet her burden of presenting any factual and legal basis for concluding the third-party assignment(s) were void, rather than merely voidable, no possible basis for leave to amend has been shown." (*Tanguma*, *supra*, typed opn. at pp. 34–35.)

*Plaintiff's Present Complaint*

Plaintiff's present complaint includes a background section and four claims. In the background section, plaintiff affirms she borrowed money from Quality pursuant to a promissory note. She used that money to purchase a house and that transaction was secured by a deed of trust. A copy of both the promissory note and the deed of trust are attached to the complaint

Plaintiff's background section then focuses upon the deed of trust. Plaintiff alleges T.D. Service Company was identified as the Trustee and the property securing the promissory note was delivered through "the Trustee's authorized agent: Fidelity National Title." Plaintiff further alleges, among other statements, that the deed of trust "provided

8.

that Mortgage Electronic Recording Services, a Delaware Corporation with its headquarters in the State of Michigan ('MERS') was a beneficiary under the [deed of trust] solely as a nominee, or agent of Quality. MERS is given no other authority under the [deed of trust] and by the word 'solely' is restricted in exercising any authority it is given as Beneficiary to agency authority only."

Plaintiff then turns to aspects of the promissory note, alleging MERS is not "referenced in any manner" in the document and thus its "authority is limited to that lawfully belonging to an agent of Quality under the terms" of the deed of trust. Plaintiff also alleges MERS "assigned all of its rights, powers, authorities, and interest" in the deed of trust to BNY on September 15, 2020. Plaintiff asserts MERS then recorded this assignment on October 16, 2009. According to the complaint, this process meant MERS could not assign any interest in the promissory note to BNY as part of its assignment, making any such assignment "void *ab initio*."

Plaintiff's background section concludes with a further discussion of the deed of trust. Plaintiff states that under section 22 of the deed of trust the "power of sale could only be invoked by Quality and not by the Trustee's own initiative, upon the occurrence of several conditions precedent to that power arising in Quality." These included, according to plaintiff, a breach by plaintiff followed by notice and an opportunity to cure "given by Quality to [plaintiff] in strict accordance with the terms of that section." Plaintiff alleges that without strict adherence, "Quality did not enjoy the power to exercise, or cause the exercise, of the power of sale" under the deed of trust. Finally, plaintiff alleges that in "doing the things herein alleged, each and every defendant was then and there the agent, servant, partner, or joint venture of Quality and was then and there acting in the full scope and capacity of that agency, service, partnership, and/or joint venture."

Plaintiff then alleges, as her first cause of action, a breach of contract claim. Plaintiff contends that on October 12, 2016, BNY caused an initiation of the power of

sale under the deed of trust, "prior to and in absence of the performances and or occurrences required as conditions precedent to the exercise of the power of sale conferred upon Quality." Plaintiff continues by alleging BNY "lacked authority under the terms of section 22 of the [deed of trust] to exercise the power of sale" because "only the Lender or the Lender's successor in interest in the [promissory note], or its Nominee could so substitute." Plaintiff follows this assertion with further claims that Quality itself has not exercised the power of sale under the deed of trust or provided plaintiff with notice under the deed of trust, and that Quality has not "granted, directed, or authorized MERS, or any other entity acting as its successor and/or assignee the right to give any notice required to" exercise the power of sale. To further support this claim, plaintiff alleges "Quality has never validly assigned its rights under the [promissory note] to any other party and any document purporting to be evidence of an assignment of those rights is false, fraudulent, and absolutely void for any purpose …."

Plaintiff alleges these assertions support a breach of contract action against BNY. Specifically, plaintiff alleges BNY's initiation of the power of sale breached the deed of trust agreement "because it was outside the scope of authority designated to MERS and its assigns and successors by Quality," violated Civil Code section 2924, subdivision (a)(6) and was not in conformity with the express provisions of the deed of trust.

Plaintiff's second cause of action is titled "Wrongful Foreclosure." (Boldface omitted.) In that action, plaintiff alleges "the sale that ensued from BNY's actions was wrongful because it was not done in accordance with the express contractual requirements of the" deed of trust and BNY "did not hold any right to performance of any obligation" under the deed of trust.

Plaintiff's third cause of action is titled "Cancellation of Trustee Deed." (Boldface omitted.) This cause alleges the foreclosure sale was improper because it did not comply with the requirements in "Article I, of Chapter 2, of Title 14, of Part 4, of Division 3of

10.

[*sic*] the Civil Code (commencing with § 2920)." More specifically, plaintiff alleges that BNY could not rely on the defaulted mortgage loan to satisfy the purchase price at the trustee sale and thus could not be granted a "Trustee Deed."

Finally, plaintiff's fourth cause of action seeks to quiet title to the property in plaintiff's favor. In this action, plaintiff alleges BNY "has no valid interest in the title to the Property, it is neither a party, nor entitled to any performance under the [deed of trust], and [BNY] is not a party to, nor entitled to receive, or secure [plaintiff's] performance under the [promissory note]."

*BNY's Demurrer and the Trial Court's Ruling*

Shortly after the complaint in this matter was filed, BNY demurred, arguing plaintiff's claims were barred by res judicata, specifically issue preclusion, or otherwise legally invalid. In granting the demurrer in this case, the trial court explained that the "underlying basis for all of" plaintiff's "causes of action are the assertions [BNY] lacked authority to foreclose." The court explained this assertion had been raised in prior litigation and was "fully litigated and determined against her." The court continued, however, noting plaintiff's present case again rested on an assertion that BNY lacked authority to conduct a nonjudicial foreclosure based on flawed assignments. This was insufficient to overcome the demurrer, however, because plaintiff's "pleading here does not give rise to any factual or legal basis to conclude that the challenged assignments were void rather than voidable." This failure to identify a basis to deem the assignments void was in addition to and separate from the fact that plaintiff's claims were also barred "under principles of res judicata." Finally, reviewing the arguments, the court concluded that nothing in plaintiff's "opposition to the demurrer indicates she can assert any new or different facts which would support a claim for relief" and thus denied leave to amend.

11.

## DISCUSSION

### *Standard of Review*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) "When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.) "When conducting this independent review, appellate courts 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552.) We may also consider matters subject to judicial notice and will affirm the judgment if any ground for the demurrer is well taken. (*Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 924.)

" 'Res judicata prohibits the relitigation of claims and issues which have already been adjudicated in an earlier proceeding. The doctrine has two components. " 'In its primary aspect the doctrine of res judicata [or "claim preclusion"] operates as a bar to the maintenance of a second suit between the same parties on the same cause of action." … The secondary aspect is 'collateral estoppel' or 'issue preclusion,' which does not bar a second action but 'precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior proceeding.' " ' [Citation.] 'The doctrine of res judicata, whether applied as a total bar to further litigation or as collateral estoppel, "rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." ' " (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 185, second bracketed insertion added.)

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under

12.

issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) "In summary, issue preclusion applies:  (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)

## *The Demurrer Was Properly Granted*

Plaintiff argues the trial court wrongly granted BNY's demurrer, focusing on distinguishing her new complaint from the prior one supporting the trial court's res judicata ruling.  We see no meaningful basis for distinguishing the two cases as the case is currently pled.

In this case, issue preclusion prevents plaintiff from proceeding on her currently pleaded causes of action.  In each claim, plaintiff relies on an assertion that Quality could not transfer any rights to MERS, MERS could not legally assign any interest to BNY and, thus, BNY could not act to foreclose on plaintiff's home or enforce terms of the deed of trust.  However, this exact issue was raised with respect to plaintiff's standing to proceed with an action prior to the foreclosure sale.  In this court's detailed analysis of that dispute, it found plaintiff had no standing to challenge a preforeclosure sale on the basis that there had been no valid assignment of any rights to MERS and thus no valid assignment of rights to BNY to proceed because the relevant facts in the pleadings and attached documents demonstrated such actions were merely voidable and not void.  The court's analysis showed that this lack of standing arises not purely because the action is proceeding preforeclosure.  Rather, the issue is that a challenge to a voidable transaction must be raised by the party holding the right to foreclose.  A homeowner who does not challenge the underlying default is not the party harmed by the allegedly invalid transfer of rights, rather that harm is potentially suffered by the party losing their right to foreclose.  The courts thus leave that dispute to the relevant parties.

13.

Plaintiff's claims all rely on the same forbidden allegation discussed in the prior case. These issues were fully and finally decided in the prior action against plaintiff. As plaintiff does not challenge the underlying debt, an assertion of an invalid transfer based on a lack of right to assign leaves plaintiff without standing to proceed. Further, plaintiff's arguments not only raise the same underlying legal theory for liability, but also rely on the same underlying factual document, the deed of trust. As this court found in that case, and as is still true here, any assertion made by plaintiff that MERS was not properly assigned any rights is undercut by the deed of trust itself which specifically identifies MERS as Quality's nominee and transfers to MERS all rights and authority under the deed of trust. In this sense, as extensively discussed by this court previously, all of plaintiff's claims that Quality has failed or never did transfer any rights to MERS are foreclosed by the documents submitted with the complaint which specifically show that transfer occurred through the express terms of the deed of trust itself, which plaintiff does not allege is fraudulent.

In an attempt to avoid the obvious implications of this court's prior ruling, plaintiff repeatedly relies on a statement from *Yvanova* that "[w]hen a property has been sold at a trustee's sale at the direction of an entity with no legal authority to do so, the borrower has suffered a cognizable injury." (*Yvanova*, *supra*, 62 Cal.4th at p. 941.) In various ways, plaintiff argues this means there are additional new facts or relevant proceedings that make this new case materially different from the prior action. This statement is of no help to plaintiff. *Yvanova* had been decided by the time this court issued its prior ruling and was discussed extensively by this court. As noted at the time, and as confirmed by reading *Yvanova*, the existence of a foreclosure sale itself is not the basis for standing found in *Yvanova*. Rather, the existence of a foreclosure sale permits a finding of standing on the part of the homeowner when that sale occurred without authority. (*Yvanova*, at p. 935 ["If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or

14.

effect whatsoever [citations], the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure."].)

In that context, an allegedly invalid transfer of rights, which is only voidable by the parties to the transfer, remains insufficient to generate standing. (*Yvanova*, *supra*, 62 Cal.4th at p. 936 ["When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself."].) Rather, one must credibly allege that the transfer was wholly without effect, or in other words, void and not merely voidable. As this court amply explained in the prior case, plaintiff's assertions of an invalid transfer from Quality to MERS and MERS to BNY raises only an argument that the transaction is voidable by those parties, whether raised prior to or after the foreclosure sale. Accordingly, the trial court correctly found that plaintiff could not proceed on the current complaint.

Plaintiff also attempts to argue that the issues discussed in the prior action are not raised at all in this action. Plaintiff contends, "the second challenged assignment was by MERS to [BNY] of its beneficial interest in the [deed of trust]," but this assignment is not challenged. "Rather, the complaint in the Present Action alleges as a matter of fact that there was never an assignment by Quality of its ownership rights in the [promissory note] of any kind to any party and concludes on the basis of this fact that any document purporting to the contrary is false, forged, or otherwise fraudulent." But this assertion is directly contradicted by plaintiff's own complaint where each of the specific causes of actions specifically allege that BNY's actions were improper because it lacked authority under the deed of trust, not the promissory note. Indeed, plaintiff's first cause of action is

for a breach of the deed of trust, its second cause of action a wrongful foreclosure because BNY "did not hold any right to performance … under the terms of the [deed of trust]," its third cause of action seeks to cancel the trust deed issued in light of BNY's actions to foreclose, and its fourth cause of action seeks to quiet title in part because BNY has no valid interest to the property because "it is neither a party, nor entitled to any performance under the [deed of trust]." Given the extensive review of this court's prior analysis above, and this court's express prior finding that the deed of trust itself is a valid transfer of rights from Quality to MERS, this court can readily reject such an obviously flawed assertion.

Likewise, this court readily rejects plaintiff's purported claims that "Quality did not grant any agency authority to MERS," that the complaint "does not challenge any transfers at all," that plaintiff's factual claim that "Quality had not itself transferred its interest in the [promissory note]" precluded dismissal of its claims, and that "the Present Action pleads that Quality had not made any assignment at all." The claims in this case expressly and directly rely upon an assertion that there was no valid transfer or assignment of rights in the deed of trust, not the promissory note. Nor do any of the assertions made in the complaint indicate in any way that authority under the promissory note is relevant to plaintiff's claims. Even if such assertions were made, this court sees no way that such a factual claim could prevent the present lawsuit from being dismissed as this court has already extensively considered the transactions involved in this case and noted that under the case law, regardless of plaintiff's factual claims, MERS is authorized to act on Quality's behalf under the deed of trust which supports the nonjudicial foreclosure action.

Finally, even upon an independent review of the pleadings, documents, and arguments made in this case, it is apparent the trial court did not erroneously grant the demurrer. Plaintiff's first cause of action, for a breach of contract, relies upon the deed of trust while alleging that BNY is not a party to that action or authorized to act in any way

under the agreement. Thus, under plaintiff's own pleadings, it has no action against BNY under any of the relevant agreements.[3] All of plaintiff's remaining causes of action assert that BNY lacked authority to act because Quality never authorized others to act for it. However, the pleadings attached to the complaint very clearly show that Quality assigned its rights and interests under the deed of trust to MERS. Indeed, the deed of trust expressly identifies MERS as Quality's nominee and beneficiary, explains the deed of trust secures both "the repayment of the Loan and all renewals, extensions and modifications of the [promissory note]" and "the performance of [plaintiff]'s covenants and agreements under this [deed of trust] and the [promissory note]," and informs plaintiff that MERS "has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." Given this express assignment of rights, whether Quality or MERS is being harmed by the actions of a third party is not an issue plaintiff maintains standing to pursue, even in a postforeclosure sale setting. (See *Yvanova*, *supra*, 62 Cal.4th at p. 936 ["When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an

---

**3**     Oddly, plaintiff's pleadings also include an allegation that in "doing the things herein alleged, each and every defendant [i.e., BNY] was then and there the agent, servant, partner, or joint venture of Quality and was then and there acting in the full scope and capacity of that agency, service, partnership, and/or joint venture." Plaintiff makes no effort to explain how it could plead BNY was both an agent of Quality acting within the scope of its agency and also argue in this appeal BNY is not an agent acting according to authority granted by Quality. Even if these issues were overcome, plaintiff has failed to allege she was not in breach of the agreement. (See *CSAA Ins. Exchange v. Hodroj* (2021) 72 Cal.App.5th 272, 276 ["The elements of a breach of contract claim are that a contract was formed; that the plaintiff did everything required by the contract; that the defendant did not do something required by the contract; and that the plaintiff was harmed as a result."].)

interest belonging solely to the parties to the assignment rather than to herself."].)  We thus find no error.

## DISPOSITION

The judgment of the trial court in favor of BNY is affirmed.  BNY is entitled to recover its costs on appeal.[4]

 

 

HILL, P. J.

WE CONCUR:

 

PEÑA, J.

 

SNAUFFER, J.

---

**4** This court previously deferred ruling on BNY's February 11, 2021 motion to dismiss on res judicata grounds.  Considering this court's opinion, that motion is denied as moot.

18.