Filed 1/23/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SOLANO COUNTY,<br><br>    Respondent;<br><br>MARK VANDENBURGH,<br><br>    Real Party in Interest. | A170818<br><br>(Solano County<br>Super. Ct. Nos. FCR359342,<br>FCR356878) |

Mark Vandenburgh, the real party in interest in this writ proceeding, was found with illegal drugs and money in his possession on two occasions, giving rise to criminal actions. On each occasion, the money was the subject of civil forfeiture proceedings. (Health & Saf. Code, § 11469 et seq.)[1] One of the criminal actions was subsequently dismissed, and Vandenburgh was convicted and sentenced in the other.

More than two years later, Vandenburg filed a motion to compel return of the money under Penal Code section 1538.5. The trial court granted the motion, concluding the People had violated the statutory requirements for

---

[1] All undesignated statutory references are to the Health and Safety Code.

1

forfeitures.  The People have petitioned for a writ of mandate.  We grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

*Forfeiture Proceedings*

Vandenburgh was searched pursuant to a warrant on October 22, 2020, and was found to have 31 grams of suspected methamphetamine and $2,795 in his possession.  These events became the basis of case number FCR356878 (hereafter, 2020 case).

In a declaration dated May 15, 2024, Matthew Olsen, a Deputy District Attorney for Solano County, described the procedures for initiating civil asset forfeiture proceedings in Solano County as follows.  "All state Civil Asset Forfeiture cases in Solano County are initiated by the District Attorney's Office," according to Olsen.  Someone from the arresting agency calls a deputy district attorney at or near the time of an arrest and describes the circumstances of the case.  The deputy district attorney then approves or declines the initiation of civil asset forfeiture proceedings.  "If Civil Asset Forfeiture proceedings are approved and initiated by a Deputy District Attorney, an officer from the arresting agency is instructed to immediately serve the suspect and/or interested party" with an executed notice of seizure, which recites the date and location of the seizure, the applicable Health and Safety Code section, the name of the approving deputy district attorney, and detailed instructions on how to file a claim, along with a blank claim form.

Pursuant to this policy, a Fairfield police officer telephoned Olsen on the evening of October 22, 2020 regarding the potential initiation of civil asset forfeiture proceedings.  In his declaration, Olsen stated:  "After telephonically reviewing the matter, I approved the initiation of Civil Asset Forfeiture proceedings."  He documented the interaction on a one-page "asset

2

forfeiture initiation form." (Capitalization & boldface omitted.) A police officer served notice of the seizure on Vandenburgh on October 22, 2020. The notice was on a form apparently generated by the district attorney's office, with the name of the Solano County District Attorney in the heading. It informed Vandenburgh that deputy district attorney Olsen had initiated forfeiture proceedings and that Vandenburgh had 30 days to file a verified claim to the property. It appears that a police officer filled in blank lines on the forms to specify the name of the police agency, the property seized, the date, time, and place of the seizure, the statute allegedly violated, and Olsen's name. The notice does not appear to have included a copy of the asset forfeiture initiation form Olsen had filled out.

Olsen caused public notice of initiation of forfeiture proceedings to be published three times in a newspaper. On September 8, 2021, no one having filed a claim for the currency, Olsen issued a declaration of forfeiture.

In the meantime, on July 26, 2021, Vandenburgh was again arrested with illegal drugs and cash in his possession. (Case No. FCR359342; hereafter, 2021 case.) On that date, Fairfield police officers conducted a probation search of Vandenburgh and found methamphetamine, heroin, and $788 in cash. Returning with a warrant to his residence the next day, they found a short-barreled shotgun and $1,020 in cash. An officer telephoned Olsen, who reviewed the matter with him and again approved the initiation of civil asset forfeiture proceedings. The officer then served Vandenburgh, on July 28, 2021, with a notice of the seizure, again informing him that Olsen had initiated forfeiture proceedings and Vandenburgh had 30 days to file a claim.

3

Olsen caused notice of these forfeiture proceedings to be published in a newspaper three times. On March 9, 2022, he executed a declaration of forfeiture because no claim to the property had been filed.

### *Criminal Proceedings*

The first of these two cases to resolve was the 2021 case. Vandenburgh had been charged with possession for sale of methamphetamine (§ 11378; count 1) and of heroin (§ 11350, subd. (a); count 2), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 3), and possession of a short-barreled shotgun (Pen. Code, § 33215; count 4). On the district attorney's motion, the case was dismissed on September 30, 2021 due to witness unavailability.

On December 28, 2021, in the 2020 case Vandenburgh pled no contest to a violation of section 11378. One of the terms of the plea deal was that the previously dismissed 2021 case would not be refiled. Vandenburgh was sentenced on February 1, 2022.

### *Motion for Return of Property*

On May 8, 2024, more than two years after the last of these events and when his conviction was final, Vandenburgh filed a motion in both cases seeking to compel the return of the money seized from him. The sole authority cited for the motion was Penal Code section 1538.5, which authorizes a defendant to move for return of property (or suppression of evidence) obtained as a result of a search or seizure that was unreasonable in certain respects. (Pen. Code, § 1538.5, subd. (a)(1).) Vandenburgh alleged he was not properly served with notice of the forfeiture proceedings because the asset forfeiture paperwork was served by a police officer, rather than by a prosecuting agency such as the district attorney. Also, as to the 2021 case, he alleged that he "cannot be said to have received notice" because he was

4

hospitalized at the time he was allegedly served and, even after his return to custody, was likely medically impaired.

The trial court granted Vandenburgh's motion on May 31, 2024, ruling that the prosecuting agency did not properly follow the procedures set forth in the forfeiture statutes for giving Vandenburgh notice of the seizures. The People moved for reconsideration or clarification of the order, and the trial court denied the motion.

On June 27, 2024, the trial court denied the People's requests in each of the criminal cases for a stay of the order granting return of the property, and it set a hearing for July 12, 2024 on an order to show cause for the People's failure to comply with the court's order.

The People petitioned this court for a writ of mandate and requested a stay of the July 12, 2024 hearing. We granted the stay and issued an order to show cause.

## DISCUSSION

### I.    Legal Background

Section 11488, subdivision (a) of the Health and Safety Code permits a peace officer who makes an arrest for certain drug crimes to seize the controlled substances and any money involved in an illegal drug transaction. (§§ 11488, subd. (a), 11470, subds. (a)—(f).) The Attorney General or the district attorney may then institute forfeiture proceedings. (§§ 11488.1, 11488.2; *Cuevas v. Superior Court* (2013) 221 Cal.App.4th 1312, 1320–1321 (*Cuevas*).) The statute provides for either judicial forfeiture or, for personal property of no more than $25,000 in value, administrative or nonjudicial forfeiture. (*Cuevas*, at p. 1321; see §§ 11488.4, subd. (a) [judicial forfeiture], 11488.4, subd. (j) [nonjudicial forfeiture].) At issue here are the requirements for nonjudicial forfeiture.

5

For nonjudicial forfeiture, section 11488.4, subdivision (j) provides that the Attorney General or district attorney may order the forfeiture and "shall provide notice of proceedings under this subdivision." The notice must specify the property and its value, the date and place of its seizure, and the violation of law alleged with respect to it. (*Ibid*.) The notice must include instructions on how to file a claim to the property pursuant to section 11488.5. (§ 11488.4, subd. (j)(5)(A).) And this notice must comply with subdivision (c) of section 11488.4, which provides that "the Attorney General or district attorney shall make service of process upon every individual designated in a receipt issued for the property seized," as well as on other interested persons. (§ 11488.4, subds. (c), (j).) The prosecuting agency must also provide notice through publication in a newspaper of general circulation. (§ 11488.4, subds. (e), (j).) Then section 11488.5 sets forth a procedure and timelines for a person who claims an interest in the property to recover it. If no claim is timely filed, the Attorney General or district attorney must prepare a written declaration of forfeiture and dispose of the property according to law. (§ 11488.4, subd. (j)(5)(B).) If a claim is timely filed, the Attorney General or district attorney must file a petition for judicial forfeiture within 30 days. (§ 11488.4, subd. (j)(5)(C).) At a hearing on that petition, there is a rebuttable presumption that the person to whom a receipt was issued is the property owner. (§ 11488, subd. (c).)

Forfeitures are disfavored, and the forfeiture statutes are "strictly construed in favor of the persons against whom they are sought to be imposed." (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1322; accord, *People v. $10,153.38 in United States Currency* (2009) 179 Cal.App.4th 1520, 1525–1526.) The court in *Cuevas* applied this rule to conclude forfeiture proceedings initiated by a police department rather than a prosecutorial

6

agency were invalid.  Police officers arrested the petitioner, questioned and searched him, seized cash and methamphetamine, and during the course of the interrogation gave him a " 'Notice of Nonjudicial Forfeiture Proceedings' " form that an officer had prepared.  (*Cuevas*, at p. 1317.)  The petitioner did not file a claim for the property, and in due course the district attorney executed a declaration of nonjudicial forfeiture.  (*Id*. at p. 1318.)  The criminal action against the petitioner was dismissed before trial.  (*Id*. at pp. 1318–1319.)  Afterward, the petitioner moved pursuant to Penal Code section 1538.5 for return of his personal property, including the money that had been forfeited, arguing the search had been unconstitutional and the forfeiture was invalid because it was initiated by the wrong party—by a police officer rather than the district attorney—and without the statutorily mandated procedures for providing notice.  (*Cuevas*, at p. 1319.)

The appellate court in *Cuevas* accepted this argument.  It explained that the facts showed the matter "was not referred to the prosecuting agency for the initiation of forfeiture proceedings as required by sections 11488.1 and 11488.2," and the proceedings "were not initiated by the Attorney General or the district attorney."  (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1323.)  This, the court concluded, was "fatal to the validity of the forfeiture process undertaken in this case."  (*Ibid*.)  In addition, the notice was invalid because it was served by a police officer rather than a prosecuting agency.  (*Id*. at pp. 1324–1325.)  Because section 11488.4 expressly provides for service by either the Attorney General or a district attorney, and because the statutes must be strictly construed in favor of the petitioner, the service was insufficient.  (*Id*. at p. 1325; § 11488.4, subds. (c), (j).)  These defects made the forfeiture proceeding invalid, and it mattered not that the petitioner had

7

actual notice of the proceedings and failed to file a claim. (*Cuevas,* at p. 1327.)

In a caveat important to the case before us, however, the *Cuevas* court added, "We do not hold that [the police officer], if the forfeiture decision had been made by an appropriate prosecuting agency, could not have properly served the notice of forfeiture on behalf of the prosecuting agency in the role of process server. [Citation.] Rather, his service of the notice of forfeiture was invalid because an appropriate prosecuting agency did not initiate it, and neither he nor the [police department] had the authority to initiate the process or serve notice in their own right." (*Cuevas*, *supra*, 221 Cal.App.4th at p. 1328, fn. 8.)

Following *Cuevas*, the same court in *Ramirez v. Tulare County District Attorney's Office* (2017) 9 Cal.App.5th 911, 917 (*Ramirez*) again emphasized that nonjudicial forfeiture proceedings initiated by peace officers rather than prosecuting agencies are invalid. Three separate cases were at issue in the appeal. In each case, a law enforcement officer issued a notice of forfeiture proceedings, and no one in the local district attorney's office signed the notice or reviewed the evidence before execution of the notice. (*Id*. at pp. 918–922.) Under the forfeiture statutes as interpreted by the court in *Cuevas*, the law enforcement officers could not validly initiate forfeiture proceedings, the purported proceedings were " 'invalid in the first instance,' " and the defendants could pursue return of their property in the trial court without having first filed a claim. (*Id*. at pp. 930–932; § 11488.5, subd. (a)(1).) In reaching this conclusion, however, the court noted that although police officers lack authority to initiate proceedings and issue notice on their own, they "may serve a notice issued by the Attorney General or district attorney." (*Ramirez*, at p. 931, fn. 18.)

8

## II.    Timeliness

Before reaching the merits of the People's arguments, we first consider the threshold issue of whether their petition for writ of mandate brought pursuant to Penal Code section 1538.5 was timely filed.  If it was not, we have no jurisdiction to consider the petition.  (See *People v. Superior Court (Brent)* (1992) 2 Cal.App.4th 675, 683–684 [failure to file petition within statutory time limit has been held to be jurisdictional].)

Vandenburgh brought his motion in his two criminal cases for return of property under section 1538.5 of the Penal Code, which authorizes such a motion on the ground the search or seizure was unreasonable.  (Pen. Code, § 1538.5, subd. (a).)  The same statute also authorizes the People to file a petition for writ of mandate or prohibition in the court of appeal "[w]ithin 30 days after a defendant's motion is granted at a special hearing in a felony case."  (Pen. Code, § 1538.5, subd. (o).)  Consistent with this provision, the People petitioned us for a writ of mandate 30 days after the trial court's ruling.

Vandenburgh argues the governing time for filing a writ petition was instead the shorter period set forth in section 11488.4 of the Health and Safety Code.  As we have explained, section 11488.4 provides both a judicial process to obtain a forfeiture and a nonjudicial process for property worth up to $25,000 (§ 11488.4, subds. (a), (j)), and section 11488.5 sets forth procedures for contesting forfeiture.  As an alternative to filing a claim pursuant to section 11488.5 in any such forfeiture proceeding, a person who is a defendant in "an underlying or related criminal action" may make a motion for return of the seized property pursuant to subdivision (h) of section 11488.4.  The motion, presumably to be filed in the criminal case, may seek "return of the property on the grounds that there is not probable cause" to

9

believe the property falls within one of the statutory categories of forfeitable property. (§ 11488.4, subd. (h)(1).) And the prosecuting agency may then "submit the record of the preliminary hearing," if it has taken place, as evidence that there is probable cause to believe the underlying or related criminal violations have occurred. (*Ibid*.) When a motion pursuant to subdivision (h) is granted, the People may file a petition for writ of mandate or prohibition "[w]ithin 15 days after a defendant's motion is granted." (*Id*., subd. (h)(2).)

We do not doubt that, had Vandenburgh filed his motion pursuant to subdivision (h) of section 11488.4, the People's petition in this court would have been untimely under this provision. But that is not what Vandenburgh did. He brought his motion for return of the property under Penal Code section 1538.5 alone. Vandenburgh's motion made no attempt to explain how the statutory violation he alleged brings the seizure of funds in either case within the terms of Penal Code section 1538.5.[2] Regardless, we see no grounds to pretend that the motion was brought on some different authority. Given the motion Vandenburgh actually filed and the trial court ruled on, we conclude the applicable deadline to bring a writ petition is the 30 days

---

[2] Penal Code section 1538.5 applies to unreasonable warrantless searches and to searches pursuant to a warrant that are unreasonable because the warrant is insufficient on its face, does not describe the seized item, or is not backed by probable cause, or because some other violation of federal or state constitutional standards occurs. (Pen. Code, § 1538.5, subd. (a)(1).) While it is not obvious to us that Vandenburgh's challenge fits into any of these categories, the People raised no such challenge in opposing the motion.

10

provided by Penal Code section 1538.5, subdivision (o) for rulings on a motion for return of property. The writ petition was timely.[3]

## III. Further Threshold Issues

The People, for their part, argue at the threshold that Vandenburgh lacked standing to bring his motion because he failed to file a verified claim to the property. (See *People v. $400* (1993) 17 Cal.App.4th 1615, 1620 [filing statutorily mandated claim confers standing on the claimant and forces judicial rather than administrative proceedings]; see § 11488.5, subd. (c).) As a result, they argue, the rebuttable presumption that he was the owner of the property never came into effect. (See § 11488, subd. (c).)

We are unpersuaded that the trial court could not reach the merits of Vandenburgh's motion on this ground. The evidence shows that Vandenburgh is the person named in the notices of seizure. The fundamental question he raises is whether the notices were valid at all. We see no ground to conclude his failure to file a claim in a nonjudicial proceeding precludes him from claiming in court that he never received proper notice of his obligation to do so. (See *Cuevas*, *supra*, 221 Cal.App.4th at p. 1327.)

The People also argue that the forfeiture is civil in nature and may be challenged only through the procedures specified by the civil forfeiture statutes—and, as a result, that the criminal court lacked jurisdiction to grant

---

[3] In reaching this conclusion, we recognize that in *Cuevas* the petitioner prevailed on a motion for return of property under Penal Code section 1538.5, and the appellate court then affirmed on a theory that section 11488.4, subdivision (g) provided the petitioner with standing and the trial court with jurisdiction over the forfeited funds. (*Cuevas*, *supra*, 221 Cal.App.4th at pp. 1319, 1331–1332.) But the *Cuevas* court had no occasion to consider the threshold issue before us—that is, the procedures properly used in such a challenge—and cases are not authority for issues not brought to court's attention or considered, even if they " ' "lurk in the record." ' " (See *People v. McKinnon* (2011) 52 Cal.4th 610, 639.)

11

the application for relief under Penal Code section 1538.5. (See *People v. $17,522.08 United States Currency* (2006) 142 Cal.App.4th 1076, 1083 [forfeiture proceedings are civil in nature].) This argument stands in some tension with the fact that the civil forfeiture statute itself seems to authorize a criminal defendant from whom property has been seized to move for return of the property in the criminal case. (See § 11488.4, subd. (h)(1).) But in any case, the argument suffers from the same problem as the People's previous argument. Properly viewed, the question is not in which of two proceedings Vandenburgh should have sought return of his property but whether there was any valid nonjudicial forfeiture proceeding at all.

The People further argue the trial court lacked jurisdiction over the motion because the criminal proceedings had long since concluded. For this proposition they rely upon *People v. Picklesimer* (2010) 48 Cal.4th 330, 337. The appellant there was no longer in custody when a high court decision created a class of people who might be entitled to relief from lifetime sex offender registration requirements. (*Id.* at p. 335.) After he brought a motion in the trial court seeking such relief, our high court explained that there was no statutory authority for a trial court to entertain a postjudgment motion unrelated to a pending proceeding, as " '[i]n most cases, after the judgment has become final, there is nothing pending to which a motion may attach.' " But the court in *Picklesimer* also explained that a court has discretion to treat an unauthorized postjudgment motion as a mislabeled petition for writ of mandate, where it otherwise meets the requirements for a writ of mandate because no " 'plain, speedy, and adequate' alternative remedy exists," the respondent has a ministerial duty, and the petitioner has a right to performance of the duty. (*Id.* at p. 340.) And an appellate court may likewise treat a motion as a petition for writ of mandate in the first instance,

12

"[a]ssuming the pleading that has been filed meets or can be amended to meet the prerequisites for a petition for writ of mandate," and "the appellate record is sufficient to determine that all potential factual issues are undisputed." (*Id.* at pp. 340–341.)

The People contend this leniency is appropriate only in limited circumstances absent here, such as when postjudgment law has created a new class of individuals entitled to a remedy but with no determined vehicle for obtaining that remedy. We are not persuaded the rule of *Picklesimer* cannot extend to the circumstances before us. The 2021 criminal case was dismissed well before the related nonjudicial forfeiture proceedings had concluded, and Vandenburgh challenges the validity of those proceedings from their inception. At least to the extent Vandenburgh's challenge could not properly be brought by motion in his criminal cases, we believe the trial court could properly have exercised its discretion in this manner, and that on the record before us we may properly do so as well. As shall become clear from our discussion of the merits, the undisputed facts in the record are sufficient for us to conclude that the trial court's ruling was erroneous.

As an additional ground, Vandenburgh urges that the trial court could retain jurisdiction to order return of the property even after conclusion of the criminal action because the property was seized pursuant to a search warrant. (See *People v. Superior Court (Loar)* (1972) 28 Cal.App.3d 600, 607–608 [trial court could entertain motion for return of property after completion of trial either under Penal Code section 1536 or in the exercise of inherent power to prevent abuse of court processes]; see also *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123 [to compel return of personal property wrongly withheld, "[m]andamus lies in the criminal proceeding even after disposition of the criminal charges"].) In their reply, the People do not

13

address the implications of this rule, which appears to apply to the facts before us.

Whether the motion for return of property is properly treated as a motion or, in the exercise of our discretion, as a mislabeled petition for writ of mandate, we conclude it is appropriate to proceed to the merits.[4]

## IV.   Validity of Forfeiture Proceedings

The People contend the trial court erred when it ruled that the forfeiture proceedings were invalid.  According to the People, Olsen's actions in reviewing the matters with the police officers and approving the initiation of proceedings were sufficient to satisfy the dictates of *Cuevas* and *Ramirez*.

On this record, we agree.  *Cuevas* establishes, and *Ramirez* confirms, that only prosecuting agencies—not law enforcement officers—have authority to initiate forfeiture proceedings, and law enforcement officers lack authority to "serve notice in their own right." (*Cuevas*, *supra*, 221 Cal.App.4th 1327–1328 & fn. 8; accord *Ramirez*, *supra*, 9 Cal.App.5th at p. 931 & fn. 18.)  But they also recognize that, once the appropriate prosecuting agency has initiated proceedings, notice may be served by law enforcement officers, not on their own behalf but on behalf of the prosecuting agency.  As *Ramirez* explains, although police officers lack authority to initiate proceedings and

---

[4] In their reply, the People also argue that Vandenburgh's motion, filed more than two years after the forfeitures were complete, is barred by the doctrine of finality of judgments—in this case, the finality of the asset forfeiture proceedings.  (See *Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1545.)  We see no application of that doctrine here, where the nonjudicial asset forfeiture proceedings did not result in a judgment.  And we note that *Ramirez* held a mandate action contesting a nonjudicial forfeiture could be brought up to three years after forfeiture is declared. (*Ramirez*, *supra*, 9 Cal.App.5th at p. 937.)

14

issue notice on their own, they "may serve a notice issued by the Attorney General or district attorney." (*Ramirez*, at p. 931, fn. 18.)

Although we consider the case close, we conclude that is what happened here. According to Olson's declaration, Solano County's standard procedure for civil asset forfeiture proceedings involves the arresting agency calling an available deputy district attorney at or near the time of the arrest to describe the circumstances of the case. The deputy district attorney then either approves or declines initiation of proceedings. And, if the deputy district attorney approves and initiates proceedings, "an officer from the arresting agency is instructed to immediately serve the suspect . . . with an executed [notice of seizure]." The notice is a form issued in the name of the District Attorney's office and a local law enforcement agency, and it attributes the initiation of forfeiture proceedings to a named deputy district attorney (here Olsen). The form is not signed by that attorney, nor by anyone else before it is served, but we do not find a requirement in the statute for an attorney's signature in order for a notice to be valid. Olsen's records showed that, on both occasions at issue here, he approved initiation of civil asset forfeiture proceedings and documented his conversation with the police officer, including the basis for and timing of his decision to initiate proceedings. The notices in both instances relate that, at a specified date and time, Olsen initiated forfeiture of specified currency found at a particular location based on a specific alleged drug crime.

The normal practice of the office of the Solano County District Attorney, as described and exemplified by the facts of this case, satisfies the requirements of *Cuevas* and *Ramirez*. Police officers are serving notice, not on their own behalf, but on behalf of the district attorney after a deputy in that office initiates forfeiture proceedings and instructs law enforcement to

15

serve the notice. During the particular transactions at issue here, Olsen documented initiation of the forfeitures, and we may presume that he followed the normal official procedures of the district attorney's office in directing that the ensuing notices issue and be served. (See *People v. Hall* (2010) 187 Cal.App.4th 282, 296 [presuming deputy sheriff's, hospital staff, and crime lab officials followed procedures as trained]; Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

We recognize that we are instructed to interpret the forfeiture statutes strictly in favor of the person against whom forfeiture is sought. (*Ramirez, supra,* 9 Cal.App.5th at p. 917; *Cuevas, supra,* 221 Cal.App.4th at p. 1322.) Relying on this principle, Vandenburgh points out that no one from the district attorney's office generated, signed, or sent to law enforcement the completed notice forms the officers were instructed to serve; rather, the officers themselves filled out the preprinted form. But we are not persuaded the rule of strict construction demands more than we have here: evidence that Olsen reviewed the details of the arrest, decided to initiate proceedings and, pursuant to standard procedures, directed the officers to serve Vandenburgh with the district attorney's preprinted notice filled in with case-specific facts that Olsen and the law enforcement officer had discussed (and which Olsen elsewhere documented). In our view, these procedures satisfy the requirements that the prosecuting agency initiate forfeiture proceedings and provide notice, and they establish that the law enforcement officers were properly acting on behalf of the district attorney's office rather than on their own behalf in serving the notice.

## DISPOSITION

The petition for writ of mandate is granted. Let a writ of mandate issue directing the trial court to vacate its order granting Vandenburgh's

16

motion to compel return of his personal property and to issue a new order denying it.  The stay issued on July 9, 2024 is dissolved upon issuance of the remittitur.  (Cal. Rules of Court, rule 8.490(d).)



TUCHER, P. J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. Superior Court (Vandenburgh)* (A170818)

17

Trial Court:         Solano County Superior Court

Trial Judge:         Hon. Jeffrey C. Kauffman

Counsel:             Krisna A. Abrams, District Attorney, Paul D. Sequeira,
                     Chief Deputy District Attorney, Bruce T. Flynn, Chief
                     Deputy District Attorney, and Jason Lianides, Deputy
                     District Attorney for Petitioner

                     Thomas A. Barrett, Chief Deputy Alternate Public
                     Defender, and Ailya Naqvi, Deputy Alternate Public
                     Defender for Real Party in Interest